HARRY VERMES v. AMERICAN DISTRICT
TELEGRAPH COMPANY AND OTHERS.

251 N. W. 2d 101.

January 21, 1977—Nos. 46284, 46300.

*Abdo & Abdo* and *E. John Abdo,* for appellant American District Telegraph Company.

*Meagher, Geer, Markham, Anderson, Adamson, Flaskamp & Brennan, J. Richard Bland,* and *O. C. Adamson II,* for appellant Apache Corporation.

*Robins, Davis & Lyons, A. James Anderson,* and *Robert M. Wattson,* for respondent.

Heard before Rogosheske, Peterson, and Scott, JJ., and considered and decided by the court en banc.

SCOTT, JUSTICE.

These are separate appeals by two of the defendants in an action brought by Harry Vermes, owner of a jewelry store in the Foshay Tower in Minneapolis, to recover losses sustained when his store was burglarized. Defendants were the American District Telegraph Company (ADT), which had supplied Vermes with a burglary detection system; the Apache Corporation (Apache), which had leased the space to Vermes; and The Towle Company (Towle), which managed the Foshay Tower at the time of the burglary.

Trial was by jury in the district court. In a special verdict, the jury allocated negligence percentages among the parties and set damages at $23,000. Plaintiff's post-trial motion to increase damages to $47,185.03 was granted. Defendants' motions for judgment notwithstanding the verdict and a new trial were denied. These appeals are by ADT and Apache from the judgment below and the order denying the various post-trial motions.

In 1968 Harry Vermes leased space in the Foshay Tower's first floor for his jewelry store. A few weeks later Vermes entered into a contract with ADT for burglar alarm service. In 1970 Towle replaced Apache as building manager.

On Monday morning, August 23, 1971, Vermes discovered that his store had been burglarized. The police investigation determined that entry had been made through the ceiling of the vault area. A mechanical-equipment access room was located over the

plaintiff's store and the thin floor of this room formed the ceiling of plaintiff's store. The construction design allowed easy entry into the vault from above. The wholesale value of the property taken was $47,185.03.

Testimony at trial centered around two issues: (1) Among Vermes, Apache, and Towle, who was responsible for the ceiling problem which allowed the entry? (2) Between Vermes and ADT, who was responsible for the lack of a detection system which might have prevented the burglary? The jury allocated the negligence causing the burglary as follows: Apache, 48 percent; ADT, 25 percent; Harry Vermes, 17 percent; Towle, 10 percent.

The trial court allocated damages among the parties as follows:

| Total Award | 83% of $47,185.03 | = | $39,163.58 |
|---|---|---|---|
| Apache: | 48/73 of award | = | 25,847.76 |
| ADT: | 25/73 of award | = | 13,315.62 |
| Towle: | 0 (less negligent than plaintiff) | | |

Apache and ADT were held jointly and severally liable for the total award.

On appeal a number of legal issues are raised including contractual limits on liability, proximate cause, intervening cause, compromise verdict, joint and several liability, and allocation of damages. Each of the pertinent issues will be discussed below with reference to all relevant evidence offered at trial. They can be summarized as follows:

(1)   Did ADT owe a legal duty to Vermes other than that arising out of its contract for services?

(2)   Is Vermes' claim against Apache barred by an exculpatory provision in their lease?

(3)   Was the burglary a legally sufficient intervening cause relieving Apache of liability?

(4)   Did the jury compromise the issues of liability and damages?

■ ADT argues on appeal that it had no duty to Vermes outside of the contract for services. Vermes answers that ADT's negligence occurred before the contract, and that since ADT "assumed to act," it must be held to the standard of a "reasonably prudent security service company."

This issue lies in that uncertain region between tort and contract. There is no question in this case that ADT properly performed the specific terms of its service contract with Vermes. It is true that once the contract was signed ADT had "undertaken" to provide Vermes with certain services, and failure to do so would give Vermes a remedy in contract. Vermes' assertion, however, that "* * * [o]nce defendant undertook to provide these services, a duty to exercise reasonable care in performing them arose, regardless of what the contract subsequently entered into did or did not provide with respect thereto" misstates the case entirely. ADT did not "undertake" anything until the contract was signed. Prior negotiations of the parties are merged into the written contract unless in the minds of both parties an independent oral contract was intended. Donnay v. Boulware, 275 Minn. 37, 144 N. W. 2d 711 (1966); Telex Corp. v. Balch, 382 F. 2d 211 (8 Cir. 1967); Restatement, Contracts 2d, § 239. Prosser states:

"* * * The question appears to be * * * whether the defendant's performance, *as distinct from his promise or his preparation,* has gone so far that it has begun to affect the interests of the plaintiff beyond the expected benefits of the contract itself, and is to be regarded, by analogy to the cases of gratuitous undertaking, as a positive act assuming the obligation." Prosser, Torts (4 ed.) § 92, p. 618. (Italics supplied.)

In this case the record shows that while limited negotiations took place between Vermes and ADT, these negotiations were clearly in contemplation of signing a contract for services and were not intended by either Vermes or ADT as an affirmative undertaking giving rise to an obligation beyond the contract. There

is little doubt that if the contract had not been signed, no obligation would exist on the part of either party. The obligations arose when the contract was signed and are therefore bounded by the terms of the contract. No evidence appears on the record that ADT acted fraudulently, nor did it hold itself out to be more than a detection service which would supply any available system requested by the customer. No prior knowledge of the problem with Vermes' store can be attributed to ADT. In fact, it is probable that ADT was never aware of the problem, since it never attempted to "push" a better, more expensive detection system on Vermes. This case involves a limited legal relationship between two parties consisting of brief prior negotiations and a contract which limits the liability of one to the other for failure to perform under the contract or for other ordinary negligence. ADT did not assume the duty of completely evaluating the security needs of the Vermes store. Such a duty might have included an investigation of the general building security as well as the physical structure of the store. These were obligations of Vermes himself as proprietor of the store and as an experienced jeweler who had contracted with ADT for many years.

In short, the contract between Vermes and ADT formed the basis of their legal relationship and placed boundaries on their legal obligations to one another. The record shows that ADT did not act in any manner implying an assumption of obligations beyond the contract, either before the contract was signed or during performance. Hence it was under no duty to Vermes other than to perform faithfully under the contract, which it did. Cases involving gratuitous undertakings are clearly distinguishable. There were no gratuitous undertakings between ADT and Vermes, and ADT did not act beyond preparation for and performance of the contract between the parties.

As we have mentioned above, logic would dictate that had Vermes decided to contract with another burglar alarm agency, ADT would not have been under any duty to Vermes whatsoever. Since there are no factual questions similar to those raised

in The Morgan Co. v. Minnesota Min. & Mfg. Co. 310 Minn. 305, 246 N. W. 2d 443 (1976),[1] there is no reason to go further than the contract itself and the performance or nonperformance of obligations imposed by it. We need not reach the application of the "negligence" clause of the contract. Rather, we hold that the court should not have submitted the interrogatory on this issue to the jury.[2] We conclude that as a matter of law, based upon this factual record, no legal duty was owed to Vermes by ADT regarding this burglary. It seems only reasonable to conclude that a burglar alarm company is not an insurer that a burglary will not happen. This crime was somewhat ingeniously executed, and it is foreseeable that almost any detection device or security system, no matter how modern or scientific, might be circumvented. Such detection systems do not guarantee the absence of crime or that all criminal attempts will fail. ADT is therefore dismissed from this action.

■ The liability of a landlord to a tenant is necessarily based upon different considerations than that owed a tenant by a third party with whom the tenant merely contracts for certain specific services. The lease between Vermes and Apache contained the following clause:

"Lessee also agrees to be responsible for and to relieve Lessor from all liability by reason of any damages or injuries to any person or thing which may arise from or be due to the use, misuse or abuse of all or any of the elevators, hatches, openings, stairways, hallways of any kind whatsoever which may exist or hereafter be erected or constructed on the said premises, or from any kind of injury which may arise from any other cause whatsoever

---

[1] That appeal, among other things, questioned the installation of the burglar alarm system itself.

[2]                "SPECIAL VERDICT
                   *  *  *  *  *

"QUESTION 5: Was defendant American District Telegraph Company negligent in failing to sufficiently advise plaintiff, Harry Vermes, as to the various systems of burglary detection available to him?"

on the said premises or the building of which the demised premises are a part, whether such damage, injury, use, misuse or abuse be caused by or result from the negligence of Lessor, its servants or agents or any other person or persons whatsoever."

On appeal Apache contends that this clause is valid and applies with full force to plaintiff. Vermes responds by arguing that (1) the negligence alleged (i. e., leasing Vermes space not suitable for a jewelry store) occurred prior to the lease, and (2) the exculpatory clause may be void as against public policy, citing the following language from Rossman v. 740 River Drive, 308 Minn. 134, 136, 241 N. W. 2d 91, 92 (1976):

"* * * The enforceability of a lease clause which exculpates a landlord from liability for negligence is a question of balance. The public policy favoring freedom of contract is weighed against the policy favoring the landlord's observance of the particular duty he is alleged to have breached. Thus, the balance depends on the nature of the particular duty breached. If the landlord's duty is basic and his observance of it is of extreme importance * * *, then the policy favoring his observance of that duty may well be stronger than the policy favoring freedom of contract. * * * [I]f the duty the landlord breaches is less basic and his observance of it is not of such grave importance * * *, then freedom of contract may well be the dominant policy."

The question then becomes whether the alleged duty of the landlord in this case is "basic."

The duty of Apache, if it can be defined as such, was to sufficiently inform Vermes concerning the store which was being considered for rental to the extent that Vermes had enough information from which he would be able to properly assess the store's suitability for his jewelry business. In the commercial context this would seem to be a "basic" duty. A commercial tenant will often have specific needs peculiar to his business which will require the premises to be leased to have certain at-

tributes. Space suitable for a restaurant, for example, might be completely unsuitable for a bank. A part of a building where the air conditioning is ineffective might suit a tenant in need of storage space, but could be useless for a doctor or a business office. In cases where suitability factors might not be obvious upon casual inspection, as with ineffective air conditioning if the premises were inspected in winter, it would be a basic duty of the landlord to inform the prospective tenant of any qualities of the premises which might reasonably be undesirable from the tenant's point of view.

A jewery store, in addition to the usual requirements for a retail store, requires physical security. The landlord's duty, prior to the signing of the lease, would be to point out any facts about the premises which would tend to make them insecure; for example, a side door accessible from the street or a thin partition separating them from a storage room. In this case it was, in the language of Rossman v. 740 River Drive, *supra*, the "particular duty" of Apache to point out to Vermes any facts about the proposed premises which might reasonably make them unsuitable for his use. As noted by Vermes in his brief, this duty was basic to the relationship between Apache and Vermes. It is fair to say that if Vermes had been informed of his insecure ceiling, he might have insisted that changes be made as conditions to the lease. He did so as to lighting.

Thus, under the Rossman decision, the broad exculpatory clause in the lease here should not operate to bar Vermes' negligence claim against Apache. It is not necessary to reach plaintiff's other arguments on precontractual negligence, contractual ambiguity, misrepresentation, and strict construction.

■ Apache contends on appeal that the unusual circumstances of the burglary make it a legally sufficient intervening cause relieving Apache of liability for Vermes' losses. To succeed with this line of argument, Apache must show that the burglary was not "reasonably foreseeable" under the circumstances. Prosser

analyzes the general problem and the specific case of criminal acts as follows:

"If the intervening cause is one which in ordinary human experience is reasonably to be anticipated, or one which the defendant has reason to anticipate under the particular circumstances, he may be negligent, among other reasons, because he has failed to guard against it; or he may be negligent only for that reason.

\* \* \* \* \*

"The same is true as to those intervening intentional or criminal acts which the defendant might reasonably anticipate, and against which he would be required to take precautions. It must be remembered that the mere fact that misconduct on the part of another might be foreseen is not of itself sufficient to place the responsibility upon the defendant. \* \* \* But once it is determined that the defendant's duty requires him to anticipate the intervening misconduct, and guard against it, it follows that it cannot supersede his liability." Prosser, Torts (4 ed.) § 44, p. 272, 275.

As for the relative functions of court and jury, Prosser states:

"In any case where there might be reasonable difference of opinion as to the foreseeability of a particular risk, the reasonableness of the defendant's conduct with respect to it, or the normal character of an intervening cause, the question is for the jury \* \* \*." Prosser, Torts (4 ed.) § 45, p. 290.

Prosser's analysis has been followed by this court. See, Hilligoss v. Cross Companies, 304 Minn. 546, 228 N. W. 2d 585 (1975).

One important factor in deciding foreseeability in a particular case has been whether similar crimes have occurred prior to the one at issue. See, Hilligoss v. Cross Companies, *supra*; Bass v. City of New York, 61 Misc. 2d 465, 305 N. Y. S. 2d 801 (1969), reversed on other grounds, 38 App. Div. 2d 407, 330 N. Y. S. 2d 569 (1972); Kline v. 1500 Massachusetts Avenue Apartment Corp. 141 App. D. C. 370, 439 F. 2d 477 (1970). See, generally, Annotation, 43 A. L. R. 3d 331, 335, 348. In the instant case there

was no evidence of record that crimes of a similar nature had occurred in the Foshay Tower. Testimony offered that such crimes had not occurred was objected to as being irrelevant, and the trial court sustained the objection. This ruling, based upon all the evidence produced, was error, but harmless. Previous crimes against tenants' property are relevant to the question of foreseeability. As has been mentioned above, this crime occurred in an unusual manner, and was carried out with great cleverness and skill, considering the inaccessibility of the room over Vermes' store. On the other hand, it took less than 2 minutes to reach the area over Vermes' vault once the access door was breached. Other factors were overall building security, an allegedly locked security door between the main floor and the access room, and the free use of pass keys by building employees.

On the whole it is difficult to say that there could not be a reasonable difference of opinion on the foreseeability of the burglary. The jury found that the criminal act in this case was foreseeable by Apache, considering all the circumstances. This finding is not clearly contrary to the evidence, and thus should not be disturbed on appeal.

■ Although the only evidence of damages at trial showed that Vermes' total out-of-pocket loss (i. e., wholesale value of goods stolen) was $47,185.03, the jury, after allocating negligence among all of the parties, awarded Vermes $23,000. On post-trial motion by Vermes, the trial judge raised the damages to $47,185.03. ADT asserts on appeal that the jury verdict was a compromise between liability and damages, while Vermes counters that the jury merely confused retail value with wholesale costs. ADT points out that $23,000 is approximately 48 percent of $47,185.03, that being the percentage of negligence attributed to Apache. It suggests that this might be explained by the jury desiring to give Vermes only the damages attributable to the "most negligent" defendant.

From the evidence in the record it is difficult to say more than the trial judge said in revising the award. He stated that it was

"unsupported by and contrary to the evidence." Since the jury apparently took some care to arrive at the exact negligence percentages, it does not appear that it was attempting to give Vermes only damages attributable to the "most negligent" defendant. This could have been done by finding that ADT and Towle had committed no negligence, and holding Vermes just less than 50 percent negligent. Such was clearly not the jury's intent. In view of a lack of any evidence to the contrary, it must be assumed that the jury simply misunderstood the proof of damages at trial, and thus gave an insufficient award which was properly revised by the trial court.

Since this court's opinion coupled with the jury verdict results in the retention of only one defendant, discussion of further issues raised becomes unnecessary. This places Apache in the position many defendants who are jointly liable find themselves in when the liability of codefendants is eliminated by a finding of a lesser percentage of comparative negligence than that of the plaintiff. We therefore order judgment to be entered for $39,-163.58 (83 percent of the damages of $47,185.03) in favor of Vermes against defendant Apache.

Reversed in part, affirmed in part, and remanded with instructions.