**RUM RIVER LUMBER COMPANY,**
**Respondent,**

v.

**STATE of Minnesota and the Department of Public Welfare, Appellants.**

**No. 49035.**

Supreme Court of Minnesota.

July 27, 1979.

Warren Spannaus, Atty. Gen., Richard B. Allyn, Sol. Gen., Michael R. Saeger, Richard A. Lockridge and Mark M. Suby, Sp. Asst. Attys. Gen., St. Paul, for appellants.

Robins, Davis & Lyons, Robert M. Wattson, John D. Shuff and Patrick E. Shipstead, St. Paul, for respondent.

Heard before SHERAN, C. J., and TODD and MAXWELL, JJ., and considered and decided by the court en banc.

TODD, Justice.

A young person with a history of mental disturbances was committed to Anoka State Hospital. In a period of 2 months, he engaged in numerous abnormal and irresponsible acts and was confined to the security ward of the hospital. Through negligent acts of the hospital, he obtained a key, let himself out of the hospital, and started a fire which destroyed property at the Rum River Lumber Company (Rum River). By legislative enactment, Rum River was allowed to sue the hospital. After a trial, Rum River obtained recovery for property damages and loss of profits. We affirm.

There is no dispute that the patient involved in this case set the fire which caused Rum River's loss. The patient had a history of mental illness. He was committed to Anoka State Hospital. In a short period of 2 months, he engaged in numerous violent acts. He kicked a female patient, broke electrical outlets and radiators, threw chairs, threw objects at other persons, and threatened the staff. In addition, he stole a visitor's car, escaped three times, committing a burglary on the last escape, and was absent without leave on at least two occasions. As a result, the patient was confined in a 12-bed, locked ward which had windows protected by security mesh. Hospital practice was to visually account for patients in this section at least every 30 minutes.

On the night of the fire, the patient took a passkey from an unlocked supervisor's office and let himself out of the hospital. No one on the staff observed that he was missing. He entered the lumberyard and set a fire which destroyed a large portion of the lumberyard. The patient was then committed to the St. Peter State Hospital as a mentally ill and dangerous person.

Special legislation was passed authorizing the lumberyard to sue the state, limiting the liability to $75,000 over that not covered by insurance, including loss of profits.[1] Suit was commenced against the state and the Department of Public Welfare on the theory that the state hospital was negligent in allowing the patient to escape and start

---

1. The fire occurred on February 28, 1973, prior to the abolition of sovereign immunity in *Nieting v. Blondell*, 306 Minn. 122, 235 N.W.2d 597 (1975). Therefore, Rum River presented its claim to the legislature, and the legislature waived its immunity.

the fire. The jury returned a verdict of $147,643.44, including $15,835 loss of profit. This was reduced to $75,000, the legislatively authorized limit of recovery. Judgment was entered for Rum River, and the defendants appeal.

The issues presented are:

(1) Does the evidence support the jury's finding that the patient's misconduct in starting the fire was not a superseding cause?

(2) Was the jury properly instructed on the hospital's duty of care?

(3) Is the award for loss of profit supported by the evidence?

1. On the issue of superseding cause, the jury was instructed that the patient's conduct of setting the lumberyard on fire was not a superseding cause if such conduct was reasonably foreseeable by the defendants. This instruction is based on well-established principles of Minnesota law.[2]

■ Defendants argue that the patient's conduct was not foreseeable as a matter of law because he had demonstrated little, if any, pyromaniacal tendencies.[3] Defendants are misguided in stating that the specific conduct by the third party must be foreseeable. It is sufficient in establishing the lack of superseding cause that the unreasonable risk of harm by the third party's conduct be foreseeable. *Vermes v. American District Tel. Co.*, 312 Minn. 33, 41, 251 N.W.2d 101, 106 (1977).

■ Abundant evidence appears in the record to support the finding that the patient's potential for harm created an unreasonable risk which was foreseeable by the defendants. The patient had escaped or been absent without leave in a 2-month

period no less than 6 or 7 times. He had demonstrated a tendency to engage in violent acts by kicking a female patient, breaking electrical outlets and radiators, throwing chairs, throwing objects at persons, and threatening the staff. Based on the record in this case, the instructions were proper and the evidence supports the finding of no superseding cause. See, *Raleigh v. Independent School District No. 625*, 275 N.W.2d 572 (Minn.1978).

2. In dealing with the issue of the hospital's duty of care, the trial court paraphrased Minn. JIG II, 112–G, which defines parental duty to protect a third person from harm caused by their children. The jury was instructed:

"Now a hospital to which a patient suffering from a mental illness or disease is committed by the court is responsible for an injury caused by the patient if the hospital was negligent with respect to defendant's duty to control the patient.

"In order to find the hospital negligent you must find that the hospital failed to exercise reasonable control over the patient. Factors to be considered in determining whether negligence exists are (a) did the hospital know or should it have known of characteristics, habits and prior conduct of the patient similar to that which resulted in the injury; (b) Did the hospital know or should it have known of the need to control the patient in the particular instance; and (c) Did the hospital have an ability to control the patient and an opportunity to do so."

Defendants argue this instruction was improper. They proposed the following instruction based on JIG II, 434 G–S, relating to the duty of a hospital to protect its patients:

---

**2.** See, *Vermes v. American District Tel. Co.*, 312 Minn. 33, 251 N.W.2d 101 (1977), noted in 4 Wm. Mitchell L.Rev. 256; *Hilligoss v. Cross Co.* 304 Minn. 546, 228 N.W.2d 585 (1975); Minn. JIG II, 142 G–S.

**3.** Only three incidents in the record show any tendency of pyromania. The patient, while at a

foster home, had once tried to smoke out some ants in a field and a bush accidentally caught on fire. On another occasion, he fell asleep in bed while smoking a cigarette, and the mattress caught on fire. The third incident was a dream in which the patient "saw a man in the room and fire out here."

"A hospital must exercise reasonable care for the protection and well being of its patients. In determining whether the hospital exercised reasonable care you may consider, among other things: What facts the hospital knew or in the exercise of reasonable care should have known concerning the physical and mental state of the patient who allegedly injured plaintiff's property."

This proposed instruction is not appropriate because it focuses on the duty of the hospital to protect the patients from harm, whereas this case involves the duty of the hospital to protect third persons from the harm caused by its patients.

■ The instruction given by the trial court is well reasoned and supported by law. In *Sylvester v. Northwestern Hospital of Minneapolis*, 236 Minn. 384, 53 N.W.2d 17 (1952), a patient in a private hospital had been injured by another patient who was intoxicated at the time. This court held the hospital owed the injured patient a duty of care. Two bases for this duty are implicit in the opinion: (1) The duty of the hospital to protect the injured patient, and (2) the duty of the hospital to control the conduct of the intoxicated patient. With regard to the second basis for imposing the duty, this court said (236 Minn. 387, 53 N.W.2d 19): [4]

"Thus a hospital which accepts patients who are either insane or suffering from some other mental disorder under such circumstances that the hospital either has actual knowledge, or the circumstances are such that by the exercise of reasonable care it should have known of the patient's dangerous and assaultive tendencies, has been held liable to other patients for injuries inflicted on them by such patient."

This court continued (236 Minn. 389, 53 N.W.2d 20):

"In the light of the unpredictable behavior of an intoxicated person as a well-recognized source of danger to others, it follows that where defendant hospital knew, or in the exercise of reasonable care ought to have known, that one of its patients was so intoxicated as to stagger when walking, it ought reasonably to have anticipated—although it had no actual knowledge that such patient was possessed of vicious or aggressive tendencies when drunk—that to permit him to wander about the hospital unguarded was likely to result in injury to other patients, and it is liable for any injury which proximately resulted from his intoxicated condition, although it could not have anticipated the particular injury which did happen."

This language clearly supports the imposition of a duty of care upon Anoka State Hospital to control the conduct of patients when the hospital has custody over the patient and foresees the unreasonable risk of harm presented by such patient. The instructions of the trial court are also consistent with our analysis set forth in *Cracraft v. City of St. Louis Park*, 279 N.W.2d 801 (Minn.1979), concerning one's duty to control or prevent the misconduct of third persons.

Cases from other jurisdictions also support the trial court's jury instructions. In *Christensen v. Epley*, 36 Or.App. 535, 585 P.2d 416 (1978), security personnel at a youth detention center allowed a male to visit a female friend at the center, and the male assisted the female in escaping. The security personnel knew the male had recently run away from home and knew that the two juveniles had previously stolen a car together. While escaping, the male visitor fatally stabbed a policeman. The Oregon court found the allegations stated a cause of action. The court set forth the

4. The court cited Restatement, Torts, § 319. This section provides: "One who voluntarily takes charge of a third person whom he knows or should know is likely to cause bodily harm to others if not controlled is under a duty so to exercise his control as to prevent the third person from doing such harm." This section appears essentially unchanged in Restatement, Torts (2d), § 319.

following rationale (36 Or.App. 540, 585 P.2d 420):

" * * * The scope of such a duty is defined in Restatement (Second) Torts, § 315.

" 'There is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless

" '(a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or

" '(b) a special relation exists between the actor and the other which gives to the other a right to protection.'

"It is generally held that a person charged with the custody of a dangerous individual has the duty to exercise reasonable care to prevent his charge from injuring a third person. *See, e. g., State v. Silva*, 86 Nev. 911, 478 P.2d 591, 44 A.L.R.3d 891 (1970); *Webb v. State*, 91 So.2d 156 (La.App.1956). In those cases, the duty is said to flow from the special relationship between the custodian and the prisoner. Thus, Restatement (Second) Torts, § 319, states:

" 'One who takes charge of a third person whom he knows or should know to be likely to cause bodily harm to others if not controlled is under a duty to exercise reasonable care to control the third person to prevent him from doing such harm.' "

The Oregon court concluded that this "special relationship" had been established even though it was the male accomplice who had killed the policeman rather than the female under custody.

Similar reasoning appears in other decisions which have indicated that a duty to control the conduct of persons under custody is imposed where the risk of harm and necessity of control is reasonably foreseeable. See, *Finkel v. State*, 37 Misc.2d 757, 237 N.Y.S.2d 66 (1962); *Korenak v. Curative Workship Adult Rehab. Ctr.*, 71 Wis.2d 77, 237 N.W.2d 43 (1976) (recognizing principle but finding it inapplicable to the facts of the case); *University of Louisville v. Hammock*, 127 Ky. 564, 106 S.W. 219 (1907). See, generally, Harper & Kime, *The Duty to Control the Conduct of Another*, 43 Yale L.J. 886; Annotation, 48 A.L.R.3d 1288; Annotation, 44 A.L.R.3d 899. See, also *Harland v. State*, 75 Cal.App.3d 475, 142 Cal.Rptr. 201 (1978).

Defendants argue the standard of care should be equivalent to that used in cases of medical malpractice. The authority cited by defendants generally involves cases where doctors allegedly were negligent in releasing patients who subsequently caused harm.[5] Although such authority might be persuasive in the context of assessing a professional judgment to release a mental patient, it is largely irrelevant in the context of assessing the actions of a hospital staff in failing to prevent a dangerous patient from escaping.

Thus, the trial court correctly instructed the jury that the hospital had a duty to control the conduct of the patient under conditions where the hospital knows of the particular patient's dangerous propensities and the hospital has authority to control the patient's conduct. Analogy to the duty owed by parents to control their children was appropriate because the analogy emphasized the factors of known dangerous propensities, foreseeability of harm, and opportunity or authority to control the patient.

■ 3. The hospital contends that the recovery of loss of profits was improperly submitted to the jury, having been based on evidence too speculative and conjectural. We have examined the record and conclude that the evidence presented satisfies the

5. See, *Seavy v. State*, 21 App.Div.2d 445, 250 N.Y.S.2d 877 (1964), affirmed, 17 N.Y.2d 675, 216 N.E.2d 613, 269 N.Y.S.2d 455 (1966); *Taig v. State*, 19 App.Div.2d 182, 241 N.Y.S.2d 495 (1963). For a general discussion of the tort liability for negligent release of a committed person who injures another, see Annotation, 38 A.L.R.3d 699.

requirements of our decisions. See, *B & Y Metal Painting, Inc. v. Ball*, 279 N.W.2d 813 (Minn.1979); *Leoni v. Bemis Co.*, 255 N.W.2d 824 (Minn.1977), noted in 5 Wm. Mitchell L.Rev. 280.

Affirmed.

OTIS and PETERSON, JJ., took no part in the consideration or decision of this case.