Argued June 2, reversed with instructions September 10, 1964

## LAUSHWAY *v.* SLATE ET AL
395 P. 2d 110

*David J. Krieger,* Portland, argued the cause for appellants. With him on the briefs were Black, Kendall, Tremaine, Boothe & Higgins and David Sandeberg, Portland.

*George L. Hibbard,* Oregon City, argued the cause for respondent. On the brief were Hibbard, Jacobs, Caldwell & Kincart, Oregon City, and Jack C. Nulsen, Jr., Newberg.

Before McALLISTER, Chief Justice, and ROSSMAN, PERRY, SLOAN, O'CONNELL, GOODWIN and DENECKE, Justices.

## GOODWIN, J.

The plaintiff was awarded damages by the jury in an action arising out of an automobile collision. The defendants who are appealing are highway contractors who for some weeks prior to the collision had been engaged in widening the section of road where the accident occurred. Donald McKinney, an uninsured motorist, was also a defendant, but he has not appealed the judgment.

Prior to this litigation, Allstate Insurance Company, the liability insurance carrier for the plaintiff, had settled with the plaintiff according to a provision of the insurance contract which obligated Allstate to pay the insured up to $10,000 in the event the insured should receive injuries caused by the negligence of an uninsured motorist. That settlement is related to one of the questions presented in this appeal.

The collision occurred east of Newberg on Highway 99-W. The plaintiff was driving uphill in a westerly direction, toward Newberg. McKinney was proceeding downhill in an easterly direction, toward Portland. Although two new lanes were under construction on the plaintiff's right, the highway consisted of only two lanes at the point at which the collision occurred. On the Newberg side of the hill, a third, or "passing" lane had been provided for east-bound traffic.

It is undisputed that McKinney drove into the plaintiff's lane of travel and drove his automobile head-on into the plaintiff's automobile.

The appellants were enlarging the road from a two-lane to a four-lane highway at the point where the collision occurred. Work had progressed so that the total paved area was 56 feet 8 inches wide. Of this total paved area, the lane for eastbound traffic was 13 feet 4 inches wide and was marked with the same broken line that had marked the center of the old highway. The remainder of the paved area had not yet been marked into lanes, and was not yet ready for travel. No work was under way during the early morning hours when the collision occurred.

It is plaintiff's theory that the contractors were negligent in failing to mark or barricade the construction area in such a way that even a negligent driver would not be likely to drive on the wrong side of the road.

There are two principal questions presented in this appeal. The defendant highway contractors contend that Allstate Insurance Company should have been joined as a party plaintiff under ORS 13.030 (real party in interest). The defendants also contend that there was no evidence that any negligence on their part contributed in any way to the collision. (They denied also that they were negligent.)

Allstate's settlement with the plaintiff was made pursuant to a "trust agreement." The provisions to be included in such a trust are spelled out with some detail in the plaintiff's policy of insurance. It is the obvious purpose of the contract to provide that Allstate will be repaid if the insured should, for the same injury, recover damages against any tort-feasor in

an amount sufficient to repay Allstate. At the same time, the contract provides that Allstate will not be brought into such litigation as a subrogee, or real party in interest.

This court has not had occasion to consider whether, under the standard uninsured-motorist clause, the so-called trust agreement provided for therein can successfully circumvent ORS 13.030, the real-party-in-interest statute.

We have held that a "loan receipt" is effective to keep the plaintiff's insurer (and thus information about the plaintiff's insurance) out of third-party litigation. *Furrer v. Yew Creek Logging Co.,* 206 Or 382, 292 P2d 499 (1956).

■ In the absence of a workable method of circumventing the real-party-in-interest statute, an insurer who has paid a loss to its insured is held to be subrogated to the rights of the insured. If the insured sues a third party, the insurer must be brought into the third-party litigation, provided the issue is raised by a plea in abatement. See *Waters v. Bigelow et al,* 210 Or 317, 310 P2d 624 (1957), and cases cited therein.

In *Waters v. Bigelow,* the court observed that *Furrer v. Yew Creek Logging Co.,* supra, had turned on the authenticity of the "loan" as a loan and not a payment. The rule seems to be that, unless the parties have been able to devise a strategy to avoid it, ORS 13.030 applies. However, the question whether Allstate's "trust" should be deemed a trust, and an effective device for evading the real-party-in-interest statute, will have to await another case. In the instant case it appears from the record that the appellants have no liability in any event.

The plaintiff's third amended complaint charged the highway contractors with negligence as follows:

"1. In failing to provide barricades, lights, warning, or direction signs, lanes, to warn the operators of vehicles travelling on the newly completed section of the highway as to what portions were set aside for westerly bound travel and what portions were set aside for easterly bound travel.

"2. In failing to install proper lights, warnings, lanes, or signs, indicating a separation of the main travelled portion of the highway into lanes for vehicular traffic.

"3. In failing to have a proper warning sign advising vehicular traffic on the newly completed portion of the highway to 'keep to the right.' "

The evidence in support of the foregoing allegations consisted of the testimony of various witnesses concerning their recollection of the conditions existing at the time of the accident. Although the testimony was in conflict in minor respects, it tended to show nothing that would create a duty to mark additional "lanes" at or near the point of impact. The only "lanes" relevant to this case had been established by the Highway Department prior to this construction project. These lanes were separated by a broken line painted along the center of the old road, and remained so marked during the period of construction. Eastbound travelers had one clearly marked lane for their use. Westbound travelers had the other. During the day, the recently paved roadbed was a work area. It had not been included in the traveled portion of the highway at the time of the accident, although by the time of the trial a four-lane highway had been completed.

■ There were signs posted at either end of the work area informing motorists that construction was

ahead. Photographs of such signs were received in evidence. To contradict this evidence, the driver McKinney merely said he saw no signs. Such a statement is not evidence that there were no signs. It is evidence only that McKinney did not see any. *Lehr v. Gresham Berry Growers et al,* 231 Or 202, 207, 372 P2d 488 (1962); *Napier v. Southern Pacific Co.,* 218 Or 371, 345 P2d 400 (1959).

■ Even if we assume that a jury could have concluded that the highway contractors had not exercised due care in choosing and placing the signs, the plaintiff's cause fails because it contains no proof that anything the highway contractors did or did not do had a causal relation to the accident.

The testimony about the cause of the collision was substantially undisputed. McKinney was driving home from a tavern at 3:00 a.m. on a clear and dry morning. The visibility was good, and the road was straight for 1,000 feet on either side of the point of impact. McKinney's lane of travel was clearly marked by a painted line. (McKinney denied that the line was there, but it shows clearly in photographs taken of the scene a few minutes after the accident, and all other witnesses who had knowledge of the facts said the line was there.) McKinney drove his automobile into the left lane, reserved for oncoming traffic, to pass a car parked on the right shoulder of the highway, and continued on the wrong side of the road for at least 300 yards. While he was in the wrong lane, McKinney narrowly missed a head-on collision with another automobile which was proceeding west just in front of the plaintiff's automobile. This potential accident was averted only because of evasive action by the other driver. McKinney was still on the wrong side of the road when he ran into the plaintiff.

There was also undisputed evidence that McKinney had frequently driven over the same road during the period of construction. He lived nearby in Sherwood and drove back and forth over the construction site on his way to Newberg. He testified that he knew about the construction. There is no evidence that anything done or not done by the highway contractors was a cause of the collision.

The trial court should have directed a verdict for the appellants.

Reversed with instructions to enter judgment for those defendants who have appealed.