Argued July 11, affirmed July 27, 1966

# YOUNG *v.* CROWN ZELLERBACH CORPORATION
### 417 P. 2d 394

*Donald C. Walker,* Portland, argued the cause for appellant. With him on the brief was James F. Lonergan, Portland.

*James F. Spiekerman,* Portland, argued the cause for defendants. With him on the brief were James O'Hanlon, and Mautz, Souther, Spaulding, Kinsey & Williamson, Portland.

Before McAllister, Chief Justice, and Perry, Sloan, Holman and Hammond, Justices.

HAMMOND, J. (Pro Tempore).

Plaintiff appeals from an order granting a new trial after verdict and judgment was entered for plaintiff in the sum of $25,000. Defendants, by their brief, urge that the granting of a new trial was not error but that the trial court did err in refusing to grant their motion for a directed verdict.

Plaintiff brought this action for damages resulting from personal injuries he sustained when a vehicle belonging to the corporate defendant and driven by the defendant Larsen ran over a part of his body. The accident occurred when plaintiff stopped defendants' vehicle as it was being driven along Lewis and Clark Road near Seaside. Plaintiff and one Wills had driven up a side road in plaintiff's pickup truck to cut some wood. The truck ran out of gas and they walked to Lewis and Clark Road where plaintiff waved down the approaching vehicle of defendants.

The defendants' vehicle stopped at plaintiff's signal and he asked the defendant Larsen and the vehicle's other occupant for a ride. There is conflict as to what the exact conversation was, but it is agreed that Larsen declined to give plaintiff and Wills a ride. There is also conflicting evidence as to whether plaintiff tried to open the door of the Crown Zellerbach vehicle. It is agreed, however, that after the ride had been refused, and while plaintiff still had his hand on the door handle of the defendants' vehicle, Larsen started to drive away.

From that point the plaintiff contends that his hand became stuck on the door handle, or "froze" on the handle, whereas Larsen and his passenger contend that Young was trying to pull the door open. In any event, it is conceded that Young ran along side of the vehicle with his hand on the door handle until, from an undetermined cause, he fell and was run over by the back wheel of defendants' vehicle.

This cause came on for trial, and at 2:05 p.m. of the second day the matter was submitted to the jury, who thereupon retired to deliberate. Counsel for defendants then indicated to the court that he wanted to be present upon the return of the verdict, and he was later advised that if the jury were unable to reach a verdict by 6 p.m. the court would declare a mistrial. Counsel for plaintiff advised the court that he would not be present when the jury returned.

At about 6 p.m. the trial judge had the bailiff bring the jury before the court. Neither counsel was then present, and no court reporter was in attendance. The trial judge later made a record in the presence of both attorneys of what then transpired. Such record discloses that the court then asked the foreman of the jury if they had arrived at a verdict. The foreman

replied that they had not and that the jury was split seven to five, without indicating whether the seven votes favored plaintiff or defendant. The foreman was then asked whether there was any possibility of their arriving at a verdict, and he said no.

The trial judge relates in the record the following events:

"* * * The jury was obviously tired and some of them would indicate that they were, to say the least, a bit angered. At that time I advised them that jury service was rather difficult, that I realized that they were tired, and that I would discharge them. However, I then proceeded to discuss the cost of trials to the taxpayers and to the litigants, and that it was unfortunate that they couldn't have arrived at a verdict. I definitely intended to declare a mistrial before I gave the so-called lecture, although my tone of voice was not in any way critical of the jury.

"At this time the No. 8 juror * * * stated that they were ready to take another vote at the time I called them in, and thought maybe I should send them back out again, at which time I said, 'Very well.'

"Immediately thereafter, in a rather irascible tone * * * [the juror] asked why the taxpayers of Multnomah County should have to assume the cost of this trial, since the accident occurred in Clatsop County. I merely mentioned that this was a matter of change of venue, and whether anybody understood this or not, I don't know."

The court sent the jury back to deliberate, and within two minutes thereafter, defendants' attorney returned to the courtroom and was then briefly advised by the court regarding what had transpired in his absence. In another three to five minutes the bailiff stated that the jury had advised her that they had reached a partial verdict and wanted more time to arrive at

their full verdict. In less than five minutes more the jury returned with the verdict for plaintiff in the sum of $25,000. The jury was polled, and after some confusion was cleared up, it appeared that nine jurors favored the verdict.

After reciting the above facts the trial judge advised the attorneys that he would sign a judgment based upon the verdict, but that in his opinion he had committed prejudicial error in his remarks to the jury, under the circumstances described. The judge invited both attorneys to move for a new trial, and advised that if such a motion was made by either party, he would grant it. Thereafter the defendants filed their motion for a judgment in their favor n.o.v., and, in the alternative, a motion for a new trial.

The court, by its order entered herein, determined that, based upon its own motion, as well as upon the motion of defendants, there were irregularities in the proceedings in that the court made the remarks described above which resulted in a verdict based upon passion and prejudice and that such remarks were made out of the presence of the court reporter and without counsel for defendant being present. The judgment for plaintiff was set aside and the defendants were granted a new trial. Defendants' motion for a judgment n.o.v. was denied.

██ We do not hold that it is error in and of itself for a trial judge to comment to a jury regarding the expense of trying jury cases. However, when such comment is made in such a manner that it results in precipitous action by the jury evidencing misconduct, passion or prejudice in their determination, then error has been committed. There is evidence that such result obtained here.

This court has held many times that where error has been committed the question of whether a new trial should be granted lies within the sound discretion of the trial court, and an order granting a new trial will be reversed only for a manifest abuse of that discretion. *Stanich v. Buckley et al,* 230 Or 126, 268 P2d 618 (1962); *Hillman v. North Wasco County PUD,* 213 Or 264, 323 P2d 664 (1958); *Burrows v. Nash,* 199 Or 114, 259 P2d 107 (1953); *Clark v. Fazio et al,* 191 Or 522, 230 P2d 553 (1951).

If error is found to exist, this court will not examine minutely the question of whether such error was prejudicial in the face of a finding by the trial judge, either explicitly stated or inherent, in the order granting a new trial, that a party was prejudiced by such error. The trial judge was there and observed the effect of his remarks upon the jury. *Clark v. Fazio,* supra.

Appellant contends that if any irregularities were committed the defendants waived them by failing to make timely objection. The point is, that although when defendants' counsel returned to the courtroom, and the court briefly advised him regarding what had transpired in his absence, the attorney made no objection until after the jury's verdict was received. There is no merit to this contention. No court reporter was present until after the verdict was received, and the record indicates that the entire sequence of events was not disclosed until the trial judge reconstructed the events for the record on the following Monday morning. We have previously held that a new trial may be granted on account of prejudicial error occurring upon the trial which was not called to the attention of the court during the trial, and as to which

no exception was taken. *Hillman v. North Wasco County PUD*; *Clark v. Fazio et al*, both supra; and, *Lyons v. Browning et al*, 170 Or 350, 133 P2d 599 (1943).

■ One of the grounds for a new trial included in the defendants' motion therefor and in the court's order granting the same was that the questioned remarks by the court to the jury were made without the defendants' attorney or the defendants being present, and without the defendants' attorney having waived his presence. This was in violation of ORS 17.325 which requires the presence of, or notice to, the parties or their attorneys under such conditions. While we are not prepared to say that such violation would in every case be grounds for granting a new trial, it does lend weight to the trial judge's determination that the rights of the defendants were prejudiced. *Peters v. S. I. A. C.*, 236 Or 27, 386 P2d 800 (1963); *Oien v. Bourassa*, 221 Or 359, 351 P2d 703 (1960); *Grammer v. Wiggins-Meyer Steamship Co.*, 126 Or 694, 270 P 759 (1928).

We conclude that it was not error for the trial court to set aside the judgment and grant a new trial.

The final question is: Should the court have granted the defendants' motion for a directed verdict in their favor? The first issue, then, is whether there was any evidence upon which the jury might have made a determination that the defendants were negligent. The acts of negligence alleged in the complaint are:

"1. In failing to exercise due care in allowing plaintiff sufficient time to back away from said vehicle before it was accelerated forward;

"2. In failing to give warning to plaintiff that the vehicle was going to proceed forward immediately;

"* * * * *"

■ There is evidence that the defendant Larsen knew that plaintiff's hand was still on the door handle of the vehicle after he started driving away. What caused plaintiff's hand to be there is in dispute, and therefore the question was one to be resolved by a jury. The evidence is in conflict as to whether an effective warning of an intention to drive away was given by defendant to the plaintiff. It is the position of defendants that the plaintiff was a trespasser when he took hold of the vehicle's door handle and that as such there was no duty owing to him which was violated by defendants. We cannot say as a matter of law that plaintiff was a trespasser. That issue was properly submitted to the jury.

■ Defendants insist that plaintiff was negligent as a matter of law because he violated the statute which states, "No person shall stand in a roadway for the purpose of soliciting a ride from the driver of any private vehicle." ORS 483.218. This issue was removed by the court from the jury's consideration, and properly so, inasmuch as there could be no causal connection between the soliciting of a ride and the events which brought about the injuries.

■ A trial court should direct a verdict only when there is a complete absence of proof on some essential issue, or when there is no conflict in the testimony and it is susceptible of only one construction. In considering a defendant's motion for directed verdict, the court should view the evidence in a light most favorable to the plaintiff, and the plaintiff should be accorded the benefit of every favorable inference that may be drawn from the evidence. The application of these tests to the instant case does not produce a proper case for a directed verdict for the defendants.

*Rusho v. Miller,* 239 Or 475, 398 P2d 191 (1965); *Glascock v. Anderson,* 198 Or 499, 257 P2d 617 (1953); *Smith v. Ind. Hosp. Assn.,* 194 Or 525, 242 P2d 592 (1952).

The motion for an order directing the defendants' verdict was properly denied.

Affirmed.