LINK, *Respondent,*
*v.*
MASSIE, *Defendants,*
SLATE, *Appellants.*
(No. 35116, SC 24610)

561 P2d 634

William L. Hallmark, Portland, argued the cause for appellants. With him on the briefs were Jones, Lang, Klein, Wolf & Smith, Portland.

Michael O. Whitty, Coos Bay, argued the cause for respondent. With him on the brief were Guy A. Stokes, and Chandler, Walberg & Whitty, Coos Bay.

Before Denecke, Chief Justice, and Holman, Howell, and Davis, Justices.

DAVIS, J., Pro Tempore.

**DAVIS, J.,** Pro Tempore.

This is a wrongful death claim arising out of an accident that occurred on the Empire-Cape Arago Highway in Coos County, Oregon, at approximately 7 p.m. on July 11, 1974. The car driven by defendant Massie collided with a vehicle driven by Ingrid Link, in which Johanna Link was a passenger. As a result of the collision, Johanna was killed.

A portion of the highway where the accident occurred was under construction by the defendant Oregon State Department of Transportation by and through its general contractor, defendant Fred H. Slate Co.

A jury returned a verdict for plaintiff against defendants Massie and Slate and in favor of the State of Oregon. Defendant Slate appeals, contending that the trial court should have directed a verdict in their favor.

The only question presented is whether the negligence of defendant Massie was so gross as to be an unforeseeable intervening cause of the collision and, as a matter of law, relieved defendant Slate of any liability for the death of Johanna Link.

In considering the defendants' motion for a directed verdict, the evidence will be viewed in the light most favorable to the plaintiff, and the plaintiff should be accorded the benefit of every favorable inference that may be drawn from the evidence.[1]

The evidence discloses that defendant Slate was under contract with the State Highway Department to asphalt a portion of a two-lane highway where the accident occurred. Two inches of asphalt had been laid and the traffic was permitted to travel over it. A washboard effect developed on the main traveled portion of the right traffic lane due to rainy conditions,

---

[1] *Young v. Crown Zellerbach,* 244 Or 251, 417 P2d 394 (1966); *Denley v. Mutual of Omaha,* 251 Or 333, 445 P2d 505 (1968).

creating a series of three distinct bumps. A short distance past this point is where the accident occurred.

Photographs of the scene of the accident were received in evidence. There is a dispute as to the length of time in which the bumps had developed, ranging from one week before the accident, as testified to by an investigating police officer, to two or three days before the accident, as testified to by the supervisor of defendant Slate.

On the day of the accident, in the late afternoon, the State Highway Engineer in charge of this job and the supervisor of defendant Slate examined this area, and it was agreed that defendant Slate should patch over these bumps but due to the lateness of the hour and because the asphalt plant was closed, this was not accomplished on that date. The supervisor for defendant Slate testified that he knew that this was a hazardous condition.

There was a conflict in the evidence as to what signs were or were not posted. The supervisor for defendant Slate admitted that he did not comply with the minimum requirements for the posting of signs as set forth in the contract with the State Highway Department, including the failure to set out "bumps" or "dip" signs or "high riser flags." These flags, according to this witness, were to "wake people up." The supervisor stated that during the course of the construction of the road various warning signs used were stolen by members of the public and were not replaced. The evidence further indicates that those signs on the construction area were turned sideways after completion of work for the day. It is clear, however, that the construction area was posted for 35 miles per hour.

During the day of the accident defendant Massie consumed 10 or 11 beers and had an argument with his girl friend. He left Coos Bay between 6:30 and 7:00 p.m. in an angry mood. Defendant Massie admitted

traveling at a speed of 70 to 80 miles per hour while on a four-lane part of the highway, believing that he was involved in a drag race with an automobile that he had passed. He slowed his vehicle to 50 to 60 miles per hour after reaching the two-lane road and continued at that speed until immediately before the accident. A witness who had followed Massie for over a mile before the accident occurred testified that this defendant was traveling at a speed of 40 to 50 miles per hour and "after he [Massie] went across the bumps he just seemed to have lost control and he was all over." This witness stated that Massie appeared to have no problem driving his vehicle until he crossed the bumps. After this, his car went into the other lane, striking the Link vehicle head on. This witness denied that he was drag racing with Massie.

A witness operating a motorcycle in the left lane of traffic, ahead of the Link vehicle, testified that he observed Massie coming around the curve going 50 miles per hour and gradually drifting over into the left lane of traffic, thereafter swerving sharply to the right to avoid the motorcycle and nearly going onto the shoulder on the right-hand side of the road. This witness said that he continued to observe Massie through his mirror until the accident occurred. He did not have an opinion as to whether Massie went over the bumps or not.

One of the police officers at the scene stated that Massie told him that he had hit bumps in the road and lost control of his automobile. Another officer testified that he talked to Massie at the scene and was of the opinion that he was under the influence of intoxicating liquor. Records introduced at the trial indicated that this defendant's blood alcohol content was .12; that he pleaded guilty to a charge of negligent homicide.

There was a total of 113 feet of skid marks left by Massie's car before the collision. The evidence further discloses that Massie did not know the bumps were on

the road, although he was familiar with the highway and knew that it was under construction. He stated that he had no recollection of seeing warning signs before the accident although he admitted, on cross-examination, that he paid no attention as to whether or not the signs were there.

During the trial defendant Massie stated that he lost control of his automobile after hitting "something" in the road and thereafter applied his brakes.

■ Defendant Slate argues that the negligence of defendant Massie was so gross and unusual that it could not be reasonably foreseeable by defendant Slate. Such unusual negligence, against which defendant Slate was under no obligation to take precaution, was a superseding cause of any negligence of defendant Slate. This superseding cause relieved them, as a matter of law, of responsibility for the death of Johanna Link.

"* * * [T]he duties of the court in any case in which 'proximate cause' is involved are as follows:
"* * * * *.

"4. The determination of the standard of conduct and the extent of the defendant's obligation, in all cases where reasonable men could not differ, or any limitation is imposed by the law. This would include, of course, any limitation of liability as to consequences directly caused, *or any case in which the defendant's responsibility is superseded by abnormal intervening forces.*" W. Prosser, Law of Torts 289-90, § 45 (4th ed 1971). (Emphasis added.)

The Restatement of Torts defines an intervening force as
"* * * one which actively operates in producing harm to another after the actor's negligent act or omission has been committed." Restatement (Second) of Torts 465, § 441 (1965).

A superseding cause is defined as
"* * * an act of a third person or other force which by its intervention prevents the actor from being liable for harm to another which his antecedent negligence is a

[ 720 ]

substantial factor in bringing about." Restatement (Second) of Torts 465, § 440 (1965).

Defendant Slate cites *Laushway v. Slate,* 238 Or 352, 395 P2d 110 (1964), to support their position as to causation. A review of that decision indicates that the court found that the defendant contractor was not negligent as charged, but stated, at 357:

> "Even if we assume that a jury could have concluded that the highway contractors had not exercised due care in choosing and placing the signs, the plaintiff's cause fails because it contains no proof that anything the highway contractors did or did not do had a causal relation to the accident."

This is a far cry from the facts of this case. Defendant Slate ignores the evidence that the bumps in the road were the cause of Massie's vehicle going out of control. This may or may not be true, but we are of the opinion that it was a question for the jury's determination.

Causation and foreseeability have been well delineated in *Stewart v. Jefferson Plywood Co.,* 255 Or 603, 469 P2d 783 (1970):

> "The specific question before us is, then, whether plaintiff's injury and the manner of its occurrence was so highly unusual that we can say as a matter of law that a reasonable man, making an inventory of the possibilities of harm which his conduct might produce, would not have reasonably expected the injury to occur. Stated in another way, the question is whether the circumstances are out of the range within which a jury could determine that the injury was reasonably foreseeable." 255 Or at 609-10.

The carnage caused on the highways in this state by drinking drivers is common knowledge, and the laws attempting to solve this problem have become more stringent. Under the circumstances of this case, we are of the opinion that an ordinary, reasonable road contractor could foresee that the accident could occur and that the negligence of Massie was not so unusual as to be an intervening cause.

To encumber this decision with the numerous cases cited by the parties is deemed unnecessary. Suffice to say, we are satisfied that no error was committed by the trial court in denying a directed verdict in favor of defendant Slate.

Affirmed.