Argued and submitted January 8, remanded for further proceedings July 31,
petition for review denied October 29, 1996 (324 Or 323)

# STATE OF OREGON,
*Respondent,*

*v.*

# PAUL VETTRUS,
*Appellant.*

## (9406-44374; CA A88168)

922 P2d 673

Philip A. Lewis argued the cause and filed the brief for appellant.

Kaye E. Sunderland, Assistant Attorney General, argued the cause for respondent. With her on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Before Riggs, Presiding Judge, and Landau and Leeson, Judges.

RIGGS, P. J.

**RIGGS, P. J.**

■       Defendant appeals from a conviction for prostitution, ORS 167.007,[1] and resisting arrest, ORS 162.315. He contends that he has been placed in jeopardy of being punished twice for the same crime,[2] because he was required to pay $200 for the return of his car, which was seized for civil forfeiture at the time of his arrest. Defendant also contends that he should have been granted a new trial after the trial judge communicated with jurors off the record and outside the presence of the bailiff, the parties and the attorneys. We affirm on the first issue but remand for findings on the second.

While driving his vehicle in Portland, defendant stopped and offered to pay $40 to a female police officer who was posing as a prostitute. Defendant was arrested and charged with prostitution and resisting arrest. The police immediately seized his vehicle pursuant to Portland City Code (PCC) section 14.90.030, which authorizes the forfeiture of vehicles that are used to commit

> "[c]onduct involving violation of, solicitation to violate, attempt to violate or conspiracy to violate any provision of [the prostitution statute]."[3]

Several hours later, police returned the vehicle to defendant in exchange for his payment of towing and storage costs, plus payment of $200 to the City of Portland for the costs associated with his arrest, and his signature on a document entitled "Stipulated Agreement."

---

[1] ORS 167.007 defines prostitution as engaging in, offering or agreeing to engage in "sexual conduct or sexual contact" for a fee, or paying, offering or agreeing to pay a fee to engage in said conduct.

[2] "The Double Jeopardy Clause [in the Fifth Amendment to the United States Constitution] provides protection in three situations: a second prosecution for the same offense after acquittal; a second prosecution for the same offense after conviction; and *multiple punishments for the same offense*." *State v. Phillips*, 138 Or App 468, 471, 909 P2d 882, *rev den* 323 Or 114 (1996) (emphasis supplied), *citing U.S. v. Halper*, 490 US 435, 440, 109 S Ct 1892, 104 L Ed 2d 487 (1989).

[3] Portland City Code section 14.90.030 was enacted under the authority of Oregon Laws 1989, chapter 791. That state statute, which authorizes civil, *in rem* forfeitures, appears as a note preceding ORS 166.005.

According to Sergeant Hediger, who is in charge of the police department's Asset Forfeiture Unit and whose affidavit summarized the contents of the Stipulated Agreement,

> "[b]ecause of certain unusual circumstances surrounding the seizure of defendant's vehicle, specifically the fact that it contained refrigeration repair parts necessary to conduct the defendant's business, defendant's lack of conviction record, and the fact that the vehicle contained a large quantity of coins I preferred to not inventory and store, I agreed to return the vehicle to defendant *so long as he first paid the tow lot for towing and storage and also pa[id] to the city the sum of $200, the amount I calculated to be roughly the sum necessary to reimburse the city for the cost of arresting defendant.* I also required the defendant to sign a document setting out other conditions on the release of the vehicle, including the defendant's *promise to not be arrested again for prostitution*, that if he is rearrested the city will have the immediate right to seize and *forfeit his interest in the vehicle without further notice* to him, and *waiving any claim for loss* arising out of the seizure of the vehicle. After defendant signed the agreement and paid the necessary sums to both the tow lot and to the city, I authorized the release of the vehicle to him." (Emphasis supplied.)

The Stipulated Agreement also provides that defendant "acknowledges that the release of [his] vehicle is unrelated to and has no bearing or relevance to the disposition of any criminal charges that are or may be pending in this case."

Before trial on the criminal charges, defendant filed a demurrer that challenged, *inter alia,* the constitutionality of the prostitution statute. He also filed a motion to dismiss, alleging that jeopardy had attached when he was subjected to the civil forfeiture provisions of the Portland City Code. Both the demurrer and the motion to dismiss were denied.

After a trial, the jury returned guilty verdicts on both charges. Before sentencing, defendant moved for a new trial on the ground that the trial judge had privately communicated with the jury during the course of its deliberations. The judge acknowledged having spoken with the jurors outside the presence of the parties or court staff, but denied that the contact had been related to anything other than "housekeeping" matters that had nothing to do with the case.

After declining defendant's request that a different judge hear the motion for a new trial, the trial judge denied the motion.

In his first assignment of error, defendant argues that his motion to dismiss the criminal complaint should have been granted, because jeopardy attached when his vehicle was seized for forfeiture and also when he was required to pay $200 for its return. He contends that the city's forfeiture provisions are not remedial but rather exact a punishment, as evidenced by the fact that to regain his vehicle, he was required to pay money[4] and sign an agreement under which his vehicle can be automatically forfeited without notice if he is ever again arrested for prostitution. He also points to the state's stipulation that the value of his vehicle exceeds $10,000, which is double the maximum fine that he could be required to pay for the crime of prostitution. ORS 167.007(2); ORS 161.635(1)(a).

■ The state argues that we should not consider whether the city's forfeiture code is punitive in nature and whether it therefore triggered the Double Jeopardy Clause's prohibition against multiple punishments for the same offense, because defendant "waived" any double jeopardy claim when he signed the Stipulated Agreement. That argument, however, is not supported by the facts. The language of the Agreement, in which defendant "acknowledges" that the return of his vehicle is "unrelated to and has no bearing or relevance to the disposition of any [pending] criminal charges," is unclear at best. It does not indicate that the signor is foregoing any constitutional protections, and it does not inform defendant that he is waiving the right to claim, at a later date, that he was subjected to punishment under both the civil forfeiture code provision and the criminal statute. It is inadequate proof that defendant was aware of the right that he allegedly waived.[5] *See Lyons v. Pearce*, 298 Or 554,

---

[4] In addition to challenging the $200 assessment for "costs" related to his arrest, defendant contends that jeopardy attached when the police seized $40 in cash from him. However, that argument is without merit. The $40 was seized as evidence that tended to prove the female officer's testimony that defendant had offered her $40 to engage in sexual conduct or contact.

[5] Neither does it ensure that the circumstances surrounding the signing of the Agreement are free from coercion. In this case, defendant was 63 years old and had

560, 694 P2d 969 (1985) (waiver valid only if criminal defendant "understand[s] the rights he is waiving" and waives them "free from coercion").

■    In support of his argument that a civil penalty may constitute "punishment" for purposes of the Double Jeopardy Clause, defendant cites *Montana Dept. of Revenue v. Kurth Ranch*, 511 US 767, 114 S Ct 1937, 128 L Ed 2d 767 (1994) (state tax on marijuana owned by person already criminally charged with ownership or possession thereof is functional equivalent of a second prosecution); *Austin v. U.S.*, 509 US 602, 113 S Ct 2801, 125 L Ed 2d 488 (1993) (Excessive Fines Clause of Eighth Amendment applies to forfeitures of property under 21 USC § 881(a)); and *United States v. Halper*, 490 US 435, 109 S Ct 1892, 104 L Ed 2d 487 (1989) (where actual damages to government were $585, a $130,000 fine or *in personam* civil penalty was sufficiently disproportionate to constitute a second punishment in violation of Double Jeopardy Clause). However, the recently decided case of *United States v. Ursery*, _____ US _____ , 116 S Ct 2135, 135 L Ed 2d 549 (1996), explains why defendant's reliance on those cases is misplaced. Also, defendant's claim that jeopardy attached at the civil forfeiture proceeding fails because, although such a proceeding was *threatened*, it did not take place.

We reject without discussion defendant's second assignment of error, which challenges the constitutionality of the prostitution statute, ORS 167.007.

■    In his final assignment of error, defendant argues that his motion for a new trial should have been granted, because the trial judge committed reversible error by walking into the jury room during deliberations and speaking with jurors off the record and out of the presence of the bailiff and the parties. *See* ORCP 59 C(5) (with certain exceptions, no communication may be made with deliberating jury); *Young v. Crown Zellerbach*, 244 Or 251, 258, 417 P2d 394 (1966) (affirming lower court determination that trial judge's

---

no criminal record. Because of his reaction to the arrest, he was wrestled to the ground, sprayed with a chemical agent designed to temporarily blind him, taken to jail and released late at night. His only means of transportation to his home in the Salem area was his vehicle, which was in a location known only to police officers who would release it to him only after receiving $200 and his signature. He was also without counsel.

off-the-record discussion with jury as to the state of its deliberations was prejudicial error). Defendant contends that the judge also erred in refusing to recuse himself from hearing the motion for a new trial, because a full hearing on this issue required that the judge testify. *See* ORS 14.210(1)(a) (judge shall not act in judicial capacity if judge is a party to or is directly interested in the proceeding).

The record shows that at approximately 4:30 p.m. on a Thursday afternoon, the jury was ordered to begin its deliberation. The judge informed the parties that he would be "going * * * in * * * to make an announcement" about when the jury could go home for the weekend. The state argues that defendant therefore had notice that the judge would be making contact with the jury for that purpose. Defendant contends that he assumed that the judge would send the bailiff in to tell the jury when they could go home. Both positions are tenable.

The judge himself entered the jury room and apparently spoke to the jurors. The record is unclear as to whether the judge also spoke privately with jurors in the jury room on Monday morning, when they returned. After approximately one-and-one-half hours of deliberation on Monday, the jury returned its verdict. After the jury was discharged, defense counsel objected to the judge's contact with the jury and stated, "We hadn't had an opportunity to raise that objection until this morning[.]" The matter was continued until sentencing. At the sentencing hearing, the court heard argument and then denied both the motion for a new trial and defendant's request that a different judge hear the motion.

The state contends that defendant should not be granted a new trial because he had an opportunity to avoid the alleged error by raising his concerns while the jury was still deliberating, but made the tactical decision to wait until the jurors had returned their verdict. However, on this point, the record is unclear. It shows that defense counsel became *aware* of the contact while the jury was deliberating, but suggests that he may not have had an *opportunity to object* any earlier than he did.

This case amply demonstrates the importance of trial judges having no contact with jurors off the record and outside the presence of the parties or their attorneys.

Because this sparse and conflicting record does not allow us to resolve important factual questions, we remand for a fact finding hearing, presided over by a different judge, to determine what was said by the trial judge to the jurors on Thursday afternoon and Monday morning and whether the error, if any, was prejudicial. *See Wulff v. Sprouse-Reitz Co., Inc.*, 262 Or 293, 315, 498 P2d 766 (1972) (motion for mistrial will be denied if there is no evidence that there was any discussion of the case); *Young*, 244 Or at 257 (new trial may be granted even if prejudicial error not called to the attention of the court during trial). If the factfinder determines that the judge's communication with the jury was limited to housekeeping matters that did not concern the substance of the case or the jurors' deliberations, the convictions shall stand; if not, they shall be vacated and a new trial held.

Remanded for further proceedings not inconsistent with this opinion.