Argued April 21, affirmed in part; reversed in part, and remanded
October 16, reconsideration denied November 16, 1978, petition for
review denied March 2, 1979, 285 Or 319

CHRISTENSEN, *Appellant,*

*v.*

EPLEY et al, *Respondents.*

(No. 14561, CA 9092)

585 P2d 416

W. Eugene Hallman, Pendleton, argued the cause for appellant. With him on the briefs were Robert T. Mautz and Mautz, Hallman and Rees, Pendleton.

I. Franklin Hunsaker, Portland, argued the cause for respondents. With him on the brief were R. R. Bullivant, Douglass M. Hamilton, Bullivant, Wright, Leedy, Johnson, Pendergrass & Hoffman, Portland, and Corey, Byler & Rew, Pendleton.

Before Schwab, Chief Judge, and Thornton, Tanzer and Buttler, Judges.

TANZER, J.

**TANZER, J.**

This is a wrongful death action,[1] on behalf of the estate of a Pendleton police officer, in which plaintiff seeks to recover damages from Umatilla County and three of its employees for negligently causing decedent's death.

The claims against the individual defendants arise from their duties at the Northeast Oregon Regional Youth Center. Defendant Murphy was a matron at the Center and defendants Epley and Waller were allegedly the supervisors who assigned Murphy to her duties. The liability of defendant Umatilla County is based upon the doctrine of *respondeat superior.*

Defendants demurred to plaintiff's second amended complaint contending that it failed to allege facts giving rise to a legal duty owed to the decedent and that, in any event, defendants' negligence was not the proximate cause of decedent's death. In a separate demurrer, defendants Epley and Waller raised the defense of immunity, contending that the claim is barred because it is "based upon the performance of, or the failure to exercise or perform a discretionary function." ORS 30.265(3)(c). Defendants Murphy and Umatilla County did not join in this demurrer and have not yet raised the defense of immunity. Therefore, the defense of immunity is not presented at this state of the case. *Comley v. State Bd. of Higher Ed.,* 35 Or App 465, 468-69 (n 3), 582 P2d 443 (1978). The circuit court sustained both demurrers and entered judgment for defendants when plaintiff declined to plead further. Plaintiff appeals.

We take the facts from the allegations of plaintiff's second amended complaint which, for purposes of appeal, we assume to be true. Defendants Epley and Waller assigned defendant Murphy to work as the only matron on duty at the Youth Center, a juvenile detention center, during the late evening hours of

[1] ORS 30.010 *et seq.*

February 5, 1976. She was responsible for maintenance of security and safety in the Center. In the course of her shift, Murphy permitted a male juvenile, Daryl Thompson, to enter the Youth Center to visit one of the female residents. Murphy knew that Thompson had just run away from home in violation of a juvenile court order and she knew or should have known that he had a close personal relationship with the female resident and that together they had previously stolen a car and fled the county. Shortly after entering the Youth Center, Thompson helped the female resident to escape.

The decedent, a policeman, encountered the two youths immediately following the escape and while they were still attempting to flee from the scene. Thompson then attacked the decedent with a hunting knife, inflicting fatal wounds.

Plaintiff alleges that decedent's death was proximately caused by the negligence of defendant Murphy in one or more of the following particulars:

"1. In allowing defendant Daryl Thompson to enter the Northeast Oregon Regional Youth Center after visiting hours in disregard of the rules of the Northeast Oregon Regional Youth Center.

"2. In failing to alert police officers that an unauthorized person was in the Northeast Oregon Regional Youth Center.

"3. In failing to properly supervise the activities and conduct of defendant Daryl Thompson and the female juvenile while in the Northeast Oregon Regional Youth Center.

"4. In allowing defendant Daryl Thompson and the female juvenile to escape from the Northeast Oregon Regional Youth Center.

"5. In failing to alert police officers to the whereabouts of defendant Daryl Thompson although she was aware that defendant Daryl Thompson had run away from home in violation of a prior juvenile court order."

Plaintiff further alleges that decedent's death was also proximately caused by the following negligent act of defendants Waller and Epley.

"In assigning defendant Sherrie Murphy to work alone in the Northeast Oregon Regional Youth Center at night although he knew she was not adequately trained, inexperienced and therefore unfit for such assignment."

We hold that the foregoing allegations state a cause of action against defendants Murphy and Umatilla County and therefore it was error to sustain the demurrer as to them. We further hold that the claim against defendants Waller and Epley is barred by the discretionary act exception to the Tort Claims Act and that their demurrer on that ground was properly sustained. Because we hold that Waller and Epley are immune, we do not consider whether plaintiff has stated a cause of action against them.

## I. SUFFICIENCY OF THE PLEADINGS TO ALLEGE A CAUSE OF ACTION

### A. Duty

Actionable negligence arises from the breach of a duty owed by one person to another. Thus, to state a cause of action for negligence, plaintiff's complaint must state facts which imply such a duty. *Klerk v. Tektronix, Inc.,* 244 Or 10, 13, 415 P2d 510 (1966). Whether a duty exists in a given case is a question of law for the court. *See, Allen v. Shiroma/Leathers,* 266 Or 567, 514 P2d 545 (1973); *Dewey v. A. F. Klaveness & Co.,* 233 Or 515, 524, 379 P2d 560 (1963) (O'Connell, J., specially concurring). The alleged duty in this case, in summary, is that of a custodian of a secure facility for juvenile offenders to take reasonable care to prevent escape and, upon escape, to alert the police.

Generally, every individual owes a duty to exercise reasonable care in all undertakings in order to avoid foreseeable risks of harm to persons who are within the zone of danger created by the undertaking. *See, Allen v. Shiroma/Leathers,* 266 Or at 560. The duty does not ordinarily extend to the prevention of risk of harm by the acts of third persons, however, unless a special relation exists between defendant and either the actor or the person harmed. *See* Prosser, Law of

Torts, ch 9, § 65, p 327 (4th ed 1971). The scope of such a duty is defined in Restatement (Second) Torts, § 315.

"There is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless

"(a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or

"(b) a special relation exists between the actor and the other which gives to the other a right to protection."[2]

■ It is generally held that a person charged with the custody of a dangerous individual has the duty to exercise reasonable care to prevent his charge from injuring a third person. *See, e.g., State v. Silva,* 86 Nev 911, 478 P2d 591, 44 ALR3d 891 (1970); *Webb v. State,* 91 S2d 156 (La App 1956). In those cases, the duty is said to flow from the special relationship between the custodian and the prisoner. Thus, Restatement (Second) Torts, § 319, states:

"One who takes charge of a third person whom he knows or should know to be likely to cause bodily harm to others if not controlled is under a duty to exercise reasonable care to control the third person to prevent him from doing such harm."

■ In this case, defendant Murphy contends that the requisite special relationship did not exist between herself and Thompson and thus defendant owed plaintiff no duty because the harm to plaintiff was not caused by defendant's charge, but by Thompson who aided in the escape of defendant's charge.

Such a conclusion is not logically supportable. Defendant Murphy's special relation with the inmate implies a duty to prevent the escape of the inmate. Liability for breach of the duty of prevention would

---

[2]Consistent with the second part of the rule, we have held there to be a special relation which imposes a duty on the part of a jailer toward a prisoner, who has been denied the usual means of self-protection, to exercise reasonable care to prevent harm to that prisoner by third persons. *Keeland v. Yamhill Co.,* 24 Or App 85, 89-90, 545 P2d 137 (1976). In doing so, we relied upon Restatement (Second) Torts, § 320 to find potential liability based upon negligent provision of razor blades to prisoners.

include all natural consequences of an escape. It is reasonable to expect that an escape will be accomplished by use of confederates and force. That decedent was killed by an aider and abettor of the escape, rather than by the escapee herself, does not necessarily eliminate defendant's legal responsibility as to that death.

A similar duty to prevent escape is also implied by the special relation between defendant and the decedent, Restatement (Second) Torts, § 315(b). By undertaking to oversee incarcerated individuals whose escape would pose a danger to others, the defendant assumes a responsibility which places her in a special relationship with those persons who may be harmed by negligent performance of her duties. Whether that class includes the entire general public, we need not decide; it would include police officers who suffer a special danger in relation to escapees.

Therefore, we hold that plaintiff has alleged facts which establish the requisite legal duty.

### B. Cause-in-fact

■ A valid complaint for negligence must allege facts which establish that defendant's unreasonable conduct was a substantial factor in causing plaintiff's injury. *Stewart v. Jefferson Plywood Co.,* 255 Or 603, 469 P2d 783 (1970); *Babler Bros. v. Pacific Intermountain Express Co.,* 244 Or 459, 415 P2d 735 (1966). A causal link between the negligent act and the harm, *i.e.,* something more than opportunity for injury, must be alleged.

■ Plaintiff alleged that decedent was stabbed immediately following the escape of the girl while the two youths were attempting to flee the scene. The allegation does not say explicitly "in the course of the escape," but given a fair reading, it implies that decedent's death was directly related to the escape. Therefore, the causal link is sufficiently alleged to survive demurrer.

[ 541 ]

## C. Superseding cause

■ Defendant contends that the causal link between her allegedly negligent conduct and decedent's death has been superceded by the intervening criminal act of the juvenile assailant. Generally, the act of a third person in committing an intentional tort or crime is a superseding cause of the harm which results therefrom and prior negligent acts which facilitated the criminal or intentionally tortious conduct are therefore not actionable. However, where, as here, the likelihood of a third person's criminal conduct is one of the hazards which the defendant is duty bound to protect against, the occurrence of such conduct does not break the causal chain. *See, Mezyk v. National Repossession,* 241 Or 333, 405 P2d 840 (1965). The principle is expressed in Restatement (Second) Torts, §§ 448, 449.

> "The act of a third person in committing an intentional tort or crime is a superseding cause of harm to another resulting therefrom, although the actor's negligent conduct created a situation which afforded an opportunity to the third person to commit such a tort or crime, unless the actor at the time of his negligent conduct realized or should have realized the likelihood that such a situation might be created, and that a third person might avail himself of the opportunity to commit such a tort or crime." § 448.

> "If the likelihood that a third person may act in a particular manner is the hazard or one of the hazards which makes the actor negligent, such an act whether innocent, negligent, intentionally tortious, or criminal does not prevent the actor from being liable for harm caused thereby." § 449.

■ The use of an accomplice and the reliance upon force are anticipatable means of accomplishing an escape. Thus the use of force by an accomplice in the course of an escape is a danger contemplated by the custodian's duty to prevent escape. Therefore, an assault by a confederate in effectuating the escape is not a superseding cause of decedent's death. The complaint is not subject to demurrer on this ground.

## D. Foreseeability

■ The problem of foreseeability has been traditionally discussed under the rubric of "proximate" or "legal" cause. *See, Dewey v. A. F. Klaveness & Co.,* supra; Prosser, Law of Torts, ch 7, § 54, p 250 (4th ed 1971). The Supreme Court has abandoned such terminology and elected to discuss the foreseeability of particular types of harm to particular individuals in the context of negligence or culpability. *See, McEwen v. Ortho Pharmaceutical,* 270 Or 375, 385, 528 P2d 522 (1974); *Kuhns v. Standard Oil Co.,* 257 Or 482, 478 P2d 396 (1971). The primary virtue of such an approach is that it more clearly delineates the respective roles of the court and the jury in resolving the foreseeability issue. *See, Dewey v. A. F. Klaveness & Co.,* 233 Or at 527 (O'Connell, J., specially concurring). The determination of whether defendant's conduct falls below the community's standard of what ought to be done, is primarily a jury function. Foreseeability is one element of that determination. The role of the court with respect to the foreseeability issue was described in *Stewart v. Jefferson Plywood Co.,* supra:

> "The specific question before us is, then, whether plaintiff's injury and the manner of its occurrence was so highly unusual that we can say as a matter of law that a reasonable man, making an inventory of the possibilities of harm which his conduct might produce, would not have reasonably expected the injury to occur. Stated in another way, the question is whether the circumstances are out of the range within which a jury could determine that the injury was reasonably foreseeable." 255 Or at 609-10.

Thus, after a preliminary determination by the court as a matter of law, foreseeability is a jury issue. *See also, Link v. Massie, Slate,* 277 Or 715, 561 P2d 634 (1977).

■ Foreseeability of what? The foreseeability issue has two distinct aspects. First, the harm which results must be of the general kind which a reasonable person would anticipate might result from his or her conduct,

[ 543 ]

*i.e.,* the hazard must be reasonably foreseeable. Second, the person harmed must be of the general class threatened by the conduct, *i.e.,* the person harmed must be reasonably foreseeable. *Stewart v. Jefferson Plywood Co.,* 255 Or at 608-609.

Based on these pleadings, a jury could reasonably find that the injury incurred was a reasonably foreseeable consequence of the negligent acts alleged and that decedent, a police officer, was within the class of persons who might reasonably be expected to suffer such injury.

For the foregoing reasons, we conclude that plaintiff has stated a cause of action, in negligence, against defendant Murphy and her principal, Umatilla County.

E. Limitation on Damages

In a separate assignment of error, plaintiff contends that the trial court erred in striking the prayer for relief in excess of $100,000. ORS 30.270(1) provides:

> "(1) Liability of any public body or its officers, employes or agents acting within the scope of their employment or duties on claims within the scope of ORS 30.260 to 30.300 shall not exceed:
>
> "(a) $50,000 to any claimant for any number of claims for damage to or destruction of property, including consequential damages, arising out of a single accident or occurrence.
>
> "(b) $100,000 to any claimant for all other claims arising out of a single accident or occurrence.
>
> "(c) $300,000 for any number of claims arising out of a single accident or occurrence."

Plaintiff contends that her claim is properly subject to the $300,000 limitation of section (c) rather than the $100,000 limitation of section (b) because the claim is brought on behalf of several individuals who are aggrieved by decedent's wrongful death. We hold that the $100,000 limitation applies. Regardless of the number of persons who may share in the proceeds, a

wrongful death action is commenced by the personal representative of decedent's estate not by the beneficiaries. Accordingly, it is a unitary claim and the court ruled correctly.

## II. IMMUNITY FOR DISCRETIONARY ACTS

■ Plaintiff's claim for relief against defendants Epley and Waller is predicated upon their decision to assign defendant Murphy to work alone at the Youth Center although they knew that she was not qualified for such an assignment. We hold that the allocation of personnel and the determination of what qualifications are necessary in order to perform a particular job are immune discretionary acts under ORS 30.265(3)(c).

■ The discretionary act exception to the general waiver of immunity contained in the Tort Claims Act was intended to insulate from judicial review political decisions which are expressly committed to other branches of government. *Moody v. Lane County,* 36 Or App 231, 584 P2d 335 (1978); *Comley v. State Bd. of Higher Ed.,* 35 Or App 465, 582 P2d 443 (1978). The exception protects governmental decisions which involve policy considerations such as the availability of funds, public acceptance and order of priorities. *Smith v. Cooper,* 256 Or 485, 506, 475 P2d 78, 45 ALR3d 857 (1970). Adjudication of plaintiff's claim against Epley and Waller would necessarily involve judicial review of defendants' assessment of these considerations. Decisions concerning the training and allocation of personnel are inextricably bound together with the political decisions of how available resources will be expended and what type of facility will be provided. Accordingly, such decisions are of the type which should not be subject to review by the courts. The demurrer was properly sustained as to Epley and Waller.

Affirmed in part; reversed in part and remanded.