Agrued and submitted May 12, decisions of Court of Appeals and trial court reversed and case remanded to trial court for further proceedings July 8, 1987

LITTLE,
*Petitioner on Review,*

*v.*

WIMMER et al,
*Defendants,*

*and*

STATE OF OREGON,
*Respondent on Review.*

(CC 84-11-103; CA A38322; SC S33580)

GROVES,
*Petitioner on Review,*

*v.*

WIMMER et al,
*Defendants,*

*and*

STATE OF OREGON
*Respondent on Review.*

(CC 84-07-302; CA A38323; SC S33580)
(Cases Consolidated)

739 P2d 564

Thomas J. Flaherty and Stuart O. Kendall, Lake Oswego, argued the cause for petitioners on review Denice Little and Warren D. Groves, respectively. On the petition for review was Craig A. Lytle, Lake Oswego.

John A. Reuling, Jr., Assistant Attorney General, Salem, argued the cause for respondent on review. With him on the response to the petition were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

JONES, J.

## JONES, J.

Plaintiffs, Little and Groves, seek damages for personal injuries suffered in a two-car accident. Plaintiffs allege that the two vehicles collided because of defendant State of Oregon's hazardous and negligent design, construction and maintenance of the highway. The state moved for summary judgment based upon the statute of limitations, ORS 30.275(8),[1] and the statutes of ultimate repose, ORS 12.115[2] and 12.135.[3] The circuit court allowed the state's motion for summary judgment. The Court of Appeals affirmed the circuit court without opinion. *Little v. Wimmer*, 82 Or App 748, 728 P2d 977 (1986). We allowed review to determine the application of the limitation periods to this negligence claim. We reverse the Court of Appeals and the circuit court and remand the case for trial.

### FACTS

We recite facts from the pleadings and affidavits presented to the circuit court at the summary judgment hearing. Plaintiffs' injuries occurred on March 3, 1983. Groves, as driver, and Little, as passenger, were traveling northbound at

---

[1] ORS 30.275(8) provides:

"Except as provided in ORS 12.120 and 12.135, but notwithstanding any other provision of ORS chapter 12 or other statute providing a limitation on the commencement of an action, an action arising from any act or omission of a public body or an officer, employe or agent of a public body within the scope of ORS 30.260 to 30.300 shall be commenced within two years after the alleged loss or injury."

[2] ORS 12.115 provides:

"(1) In no event shall any action for negligent injury to person or property of another be commenced more than 10 years from the date of the act or omission complained of.

"(2) Nothing in this section shall be construed to extend any period of limitation otherwise established by law, including but not limited to the limitations established by ORS 12.110."

[3] ORS 12.135(1) provides:

"An action against a person, whether in contract, tort or otherwise, arising from such person having performed the construction, alteration or repair of any improvement to real property or the supervision or inspection thereof, or from such person having furnished the design, planning, surveying, architectural or engineering services for such improvement, shall be commenced within the applicable period of limitation otherwise established by law; but in any event such action shall be commenced within 10 years from substantial completion of such construction, alteration or repair of the improvement to real property."

the same time that defendant Wimmer entered Highway 99E southbound from New Era Road. Plaintiffs allege that the two vehicles collided because defendant had designed, constructed and maintained the highway and intersection in such a hazardous and negligent fashion that traffic traveling north on Highway 99E could not adequately see traffic entering the highway from South New Era Road and that traffic entering the highway southbound from South New Era Road had to travel for a dangerously long distance in the northbound lanes of Highway 99E.

## ANALYSIS

### A. Statutes of Limitation/Repose

Plaintiffs alleged negligence in the manner in which defendant "designed, constructed and maintained" the intersection. In order to preclude plaintiffs' first two charges—faulty design and construction of the road—defendant relies on the statutes of ultimate repose. The trial court correctly held that ORS 12.115(1) and 12.135, set forth *ante* at nn 2 & 3, bar plaintiffs' action for defects existing as a result of the design or at the time of the original construction, as the intersection was designed and constructed more than 10 years prior to plaintiffs' cause of action. ORS 12.135(1) limits liability for negligent design and construction to a 10-year period "from substantial completion of such construction * * * of the improvement to real property."

But plaintiffs' action is not limited to a claim of negligent design or construction. Plaintiffs contend that defendant's ongoing maintenance of the roads and intersections was negligent as well. Specifically, plaintiffs alleged:

"That said Defendants designed, constructed, and maintained the highway and roadway grade, control signs and signals in such a hazardous and negligent condition that traffic traveling north on State Highway 99E could not adequately see traffic entering the highway from South New Era Road and that traffic entering Highway 99E from South New Era Road had to travel for a dangerously long distance in the oncoming traffic lane. Defendants failed to properly direct traffic by signs or traffic control signals so that a motorist on Highway 99E approaching South New Era Road could not pass without danger from traffic entering from South New

Era Road. Defendants failed to warn Plaintiff of this dangerous condition. * * *"

At the summary judgment hearing, defendant conceded that it was responsible for the maintenance of the highway and intersection and that the intersection did not meet current safety standards. Plaintiffs claimed that defendant had reason to know of the hazards of the intersection by the high number of accidents occurring at or near this intersection. With regard to this claim, the state argues that it had "no duty" to rectify the situation.

In *Fazzolari v. Portland School Dist. No. 1J,* 303 Or 1, 17, 734 P2d 1326 (1987), we identified the tautology behind claims of duty and no duty when they are made without reference to a particular standard of conduct that "creates, defines, or limits the defendant's duty." Without such a referent, which may be found in a status, a relationship, a statute or an ordinance, the invocation is no more than a conclusion the party wishes a court to reach about the foreseeability of the risk of harm that ensued. *Id.* at 16-17; *Cain v. Rijken,* 300 Or 706, 715, 717 P2d 140 (1986).

Defendant points to no status, relationship or law that would limit its responsibility to maintain the roads. Instead, defendant attempts to cast the claimed negligence as stemming from the original intersection design. It asserts that the key issue is "whether the state's failure to correct its alleged negligence of more than ten years ago permits plaintiffs to avoid the statute of ultimate repose," relying on this court's decision in *Josephs v. Burns & Bear,* 260 Or 493, 491 P2d 203 (1971), as controlling on this question.

In *Josephs,* plaintiff owners, lessors and lessees brought a negligence action against the builder of a roof which collapsed more than 10 years after its construction. There, plaintiffs argued that the builder had a continuing duty to warn of the dangerousness of the roof. This court disagreed, stating:

"* * * If the statute was intended to be one of ultimate repose, regardless of circumstances, it would follow that the legislature did not intend the statute to be circumvented by allegations that subsequent to the fundamental wrong, a continuing duty existed to rectify the results of such wrong. By this statement we do not intend to prejudge a situation in

which an active, continuous relationship between plaintiff and defendant exists from the time of the negligent acts to a time within the period during which an action is permitted." *Id.* at 501-02.

Defendant argues that plaintiffs here do not assert an active, continuous relationship between themselves and the state as required by *Josephs* and that it therefore had no duty to remedy the intersection's original defects beyond the first 10 years following its construction.

■ Defendant's arguments miss the mark because the complaint includes, as an independent premise, allegations of defendant's negligence in failing to remedy a dangerous condition of the highway and failure to warn motorists of the existing dangerous condition of the highway. Plaintiffs do not base their claims solely on defendant's failure to correct its original alleged negligence of more than 10 years ago.

We have recently addressed such a claim against a public body, a county, sued for failing to cut the grass at an intersection so as to ensure visibility for drivers. *Donaca v. Curry Co.,* 303 Or 30, 734 P2d 1339 (1987). Here, as in *Donaca,* there is no dispute that the state is responsible for maintaining the intersection. The powers and duties of the Oregon Transportation Commission and the Department of Transportation include continuous "supervision and control" of maintenance and improvement of the state's highways, ORS 366.205(2), 366.290(1), and the state concedes as much.[4] The question remains—and it is one for the fact-finders to decide—

> "whether defendant's conduct caused a foreseeable kind of harm to an interest protected against that kind of negligent invasion, and whether the conduct creating the risk of that kind of harm was unreasonable under the circumstances. The existence and magnitude of the risk at the intersection in

---

[4] ORS 366.205(2) provides in relevant part:

"The [Oregon Transportation C]ommission has *general supervision and control over all matters pertaining to the* * * * *improvement, maintenance, operation and administration of state highways* * * *." (Emphasis added.)

ORS 366.290(1) provides in relevant part:

"* * * [T]he construction, *improvement, maintenance and repair* of such roads *shall be under the jurisdiction of the* [D]epartment [*of Transportation*]." (Emphasis added.)

question bear on the foreseeability of the harm; the feasibility and cost of avoiding the risk bear on the reasonableness of defendant's conduct. * * *" *Donaca,* 303 Or at 38.

Plaintiffs' evidence that a number of accidents have occurred at or near the intersection creates factual questions about the foreseeability of risk and the appropriateness of defendant's conduct in failing to remedy the situation or in failing to warn motorists of the potential danger of this section of the highway. Defendant was not entitled to a summary judgment on this issue.

The trial court dismissed this claim for another reason. It ruled that defendant was immune from liability under ORS 30.265(3)(c). The court decided that defendant's failure to make the intersection safer by erecting warning signs was within the realm of a discretionary function. We turn to that issue.

## B.   Discretionary Function

ORS 30.265(3)(c) provides in relevant part:

"Every public body and its officers, employes and agents acting within the scope of their employment or duties * * * are immune from liability for:

"* * * * *

"(c)   Any claim based upon the performance of or the failure to exercise or perform a discretionary function or duty, whether or not the discretion is abused."

Defendant argues that even if the statute of ultimate repose is not dispositive of the case, the state is immune from liability in that the decision as to what traffic signs are appropriate is a policy decision and one of discretion, relying on this court's opinion in *Smith v. Cooper,* 256 Or 485, 475 P2d 78 (1970). That case arose prior to the Tort Claims Act. The defendants were State Highway Commission officials and employes. The allegations of negligence included "failing to post any or adequate signs warning of the dangerous turn" and "posting misleading and distracting signs." *Id.* at 490, 509-10. The question was whether the defendants were entitled to the immunity enjoyed by the state, specifically whether the work, that was alleged to have been done negligently was in the exercise of a "discretionary" function as distinguished from a

"ministerial" function. This court, without reference to any immunity statute, said:

"These allegations charge conduct by the executive branch of the government which should not be reviewed by the judicial branch. The decisions that were made to do or not to do these things appear to have been dependent upon considerations that a court or jury should not consider, particularly by hindsight, such as the funds available for the project, the amount of additional land necessary to make a more gradual curve, the cost of the land, the loss of the land for recreational or agricultural purposes, the amount and kind of traffic contemplated, the evaluation of traffic and safety technical data, etc.

"We hold that state employees are generally immune from liability for alleged negligence in planning and designing highways.

"We have used the term 'generally immune' in the realization that it is conceivable that a complainant could allege and prove a defect in design or planning that could adequately and appropriately be passed upon by a judge or jury, for example, ludicrous for the sake of clarity, a road designed so that it ended at the edge of a cliff. We do not construe the allegations in this complaint as alleging this type of negligent design.

"The complaint * * * charges the defendants with negligence not only in the designing and planning of the junction but with negligence in 'maintaining' the junction. Because of the context in which 'maintaining' is used, we find it obvious that the plaintiff is using 'maintaining' in the sense that the defendants continued in effect the junction as planned and designed, including the planned and designed safety precautions or lack of safety precautions. Plaintiff is not using 'maintain' to mean keeping in a state of repair. * * *" *Id.* at 511.

The court then held that the allegation against the defendants for the manner in which they "maintain" the highway did not add anything to the allegation of faulty design. *Id.* at 512.

In *McBride v. Magnuson,* 282 Or 433, 437, 578 P2d 1259 (1978), a case involving immunity of police in placing a child in protective custody, this court stated:

"* * * Discretion, as this court has noted in other contexts, involves 'room for policy judgment' or the responsibility for deciding 'the adaptation of means to an end, and discretion in determining how or whether the act shall be done or the

course pursued.' It involves the delegated responsibility for 'assessment and ranking of the policy objectives explicit or implicit in the statute' and for the judgment that one or more of these objectives will be served by a given action. In other words, insofar as an official action involves both the determination of facts and simple cause-and-effect relationships and also the assessment of costs and benefits, the evaluation of relative effectiveness and risks, and a choice among competing goals and priorities, an official has 'discretion' to the extent that he has been delegated responsibility for the latter kind of value judgment." *Id.* (citations omitted).

In *Stevenson v. State of Oregon,* 290 Or 3, 9, 619 P2d 247 (1980), this court commented that the broad statement in *Smith v. Cooper* "has resulted in a line of cases analyzing problems of public liability for injuries caused by road and highway conditions by attempting to determine whether the alleged defect was the result of planning and design on the one hand or of 'maintenance' on the other." Consequently, the *Stevenson* court, after quoting the above-quoted passage from *McBride,* rejected the design versus maintenance distinction, and again required courts to determine whether the decisions involved concerned "discretion" for the purposes of the Tort Claims Act. *Id.* at 10-16.

The state argues that it was exactly those considerations set forth in *McBride* that were involved in the decision to add or not to add signs on this portion of the highway. Therefore the state contends that it is immune from liability for plaintiffs' injuries because the signing of the roadway was a discretionary function.

■ We disagree. First, as we stated in *Stevenson,* "[t]he burden is on the state to establish its immunity. * * * [E]vidence of how the decision was made is necessary." 290 Or at 15. The state acknowledges in its briefs on appeal that the issue in this case is "the [state's] continuing *non-decision* during the most recent ten year period." (Emphasis added.) If it is a continuing *non-decision* which is in issue, then clearly the state has not met its burden to establish its immunity. In the absence of evidence that the decision was made as a policy judgment by a person or body with governmental discretion, the decision is not immune from liability.

As we said in *Miller v. Grants Pass Irrigation,* 297 Or

312, 320, 686 P2d 324 (1984), "[i]f there is a legal duty to protect the public by warning of a danger or by taking preventing measures, or both, the choice of means may be discretionary, but the decision whether or not to do so at all is, by definition, not discretionary." Furthermore, as we stated above, ORS 366.205(2) and 366.290(1) are at the very least indicative of a legislative intent to impose upon the state the duty to make highway travel reasonably safe to the general public. The "improvement, maintenance, repair and operation" are mandated functions and the state has no discretion to engage in "non-decisions" regarding the duties delineated by these mandated functions.

The decisions of the Court of Appeals and the trial court are reversed, and the case is remanded to the trial court for further proceedings consistent with this opinion.