Argued and submitted March 12, reversed and remanded December 12, 1990, reconsideration denied March 6, petition for review allowed April 16, 1991 (311 Or 266)

Albert BUCHLER,
Personal Representative for the
Estate of Beverly A. Buchler, Deceased,
*Appellant,*

*v.*

STATE OF OREGON,
by and through the
OREGON CORRECTIONS DIVISION;
Oregon Department of Forestry,
*Respondents,*

*and*

COUNTY OF TILLAMOOK;
David Wilson, Sheriff of Tillamook County,
*Defendants.*

Charles A. SEELING,
*Appellant,*

*v.*

STATE OF OREGON,
by and through the
OREGON CORRECTIONS DIVISION;
Oregon Department of Forestry,
*Respondents,*

*and*

COUNTY OF TILLAMOOK;
David Wilson, Sheriff of Tillamook County;
and Marjorie Miller,
*Defendants.*

(87-2012, 87-2024; CA A60439)

803 P2d 733

Ted E. Runstein, Portland, argued the cause for appellants. With him on the brief were David C. Noren, Kell,

Alterman & Runstein, Portland, and John H. Tuthill, Tillamook.

Rives Kistler, Assistant Attorney General, Salem, argued the cause for respondents. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Joseph, Chief Judge,* and Riggs and Edmonds, Judges.

JOSEPH, C. J.

Riggs, J., concurring.

---

* Joseph, C. J., *vice* Graber, *former* P. J.

## JOSEPH, C. J.

In these consolidated actions for wrongful death and personal injury caused by an escaped prisoner, plaintiffs appeal a summary judgment for defendants State of Oregon and Oregon Department of Forestry (defendant).[1] We review in the light most favorable to plaintiffs and draw all reasonable inferences in their favor in determining whether defendant established that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. ORCP 47; *Seeborg v. General Motors Corp.*, 284 Or 695, 588 P2d 1100 (1978). We reverse.

Simmons was convicted of burglary and unauthorized use of a motor vehicle. In December, 1985, his probation was revoked, and he was sentenced to Oregon State Penitentiary (OSP) for five years. The Oregon Corrections Division Custody Review Committee approved his transfer to the South Fork Forest Camp in Tillamook County in February, 1986. On March 26, 1986, Department of Forestry employee Wright, who was responsible for supervising Simmons and others on an inmate crew, drove the men to a work site approximately 25 miles from the forest camp. When they arrived, most of the crew climbed out of the van and began to assemble their gear. Wright left the van unlocked with the key in the ignition. He directed the men to different areas and instructed them where to begin planting trees. Simmons and several others remained by the van. Simmons climbed into the van, started the engine and slowly drove away. Wright did not pursue the vehicle.[2] He reported the escape to officials at

---

[1] The trial court also entered a judgment dismissing plaintiffs' claims against defendants Tillamook County, its sheriff and Marjorie Miller, the escapee's mother. They are not parties to this appeal.

[2] Wright said in a deposition:

"* * * I was not watching these people. I was maybe 50 feet from the van and I think there was a couple of like [sic] hills or some brush. I couldn't see all of the van, but I was real close. * * * My back was to the vehicle. I heard a vehicle start up. * * * I said what's that? * * * [Another crew member] said, that's Simmons, he said he was leaving. * * * So I turned to go back to the vehicle and he was driving off in the vehicle and that's the first knowledge that he was leaving."

Wright also testified that he watched the van move away for approximately a half mile until Simmons had "officially" left the unit, "because it's possible that I didn't know what he had in mind, I wanted to make sure I knew." Once the van was out of sight, Wright walked to another van approximately 100 feet away and reported the escape by radio.

Forestry, who contacted OSP, the Oregon State Police and the Tillamook County Sheriff's office.

Simmons drove to his mother's home near Tillamook, where he burglarized the house and stole firearms. Two days later, while attempting to steal their vehicle, he shot and killed plaintiff Buchler's daughter and shot and wounded plaintiff Seeling as they worked together in the woods near their home, approximately one mile from Simmons' mother's house.

Seeling and Buchler's father, as the personal representative of her estate, brought these actions to recover damages for wrongful death and negligence. They alleged that defendant was negligent in these particulars:

"a.  In permitting a prisoner to escape by failing to properly supervise Fredrick Earl Simmons at the Tillamook Forest Camp;

"b.  In permitting and assisting a prisoner to escape by leaving a state van unattended and unlocked with the keys in the ignition in the immediate vicinity of a work crew when it knew or should have known that a prisoner was likely to use the vehicle as a means of escape;

"c.  In failing to immediately warn and notify the public in general and, in particular, those in the area of the camp that a dangerous prisoner had escaped from the camp when it knew or should have known that Simmons was a danger to the community based on his prior criminal activities[;]

"d.  In failing to immediately warn and notify the public in general and more importantly, the personal representative, the decedent and others, who were in close proximity to Simmons' mother's home, that a dangerous prisoner had escaped from the work camp when it knew or should have known that Simmons was a danger to the local community based on his prior criminal activities and was likely to be in the vicinity of his mother's home[;]

"e.  In failing to promptly begin an extensive search for Simmons when it knew or should have known that he was likely to be dangerous to the public[.]"[3]

---

[3] Plaintiffs also alleged that defendant was negligent "[i]n placing Simmons in a work camp when it knew or should have known that he would likely attempt to escape and that the work camp lacked adequate protections to prevent him from escaping." The trial court dismissed that allegation on the basis of "quasi-judicial immunity." Plaintiffs do not challenge that ruling.

Defendant moved for summary judgment, arguing that plaintiffs' injuries were not foreseeable or, in the alternative, that it was immune from liability for certain allegations and not negligent as alleged for others. The trial court granted the motion, concluding that plaintiffs' injuries were unforeseeable as a matter of law. *See Fazzolari v. Portland School Dist. No. 1J,* 303 Or 1, 734 P2d 1326 (1987). Plaintiffs argue that summary judgment was improper, because the evidence would permit a jury to find that defendant's conduct fell within the scope of the generalized risk of the type of incidents and injuries that befell plaintiffs. *Fazzolari v. Portland School Dist. No. 1J, supra,* 303 Or at 21.

■     Defendant contends that plaintiffs' injuries were unforeseeable. First, it argues that the correct starting point for the analysis is not *Fazzolari,* but whether there was a special relationship between defendant and Simmons. *See Restatement (Second) Torts* §§ 315(a), 319. Second, it argues that, even if the proper analytical base is *Fazzolari,* the risk of harm of Simmons' assaultive behavior was unforeseeable and plaintiffs were unforeseeable victims.

We disagree with defendant's assertion that "[p]laintiffs * * * can state a claim here only if a 'special relation' exists between the state and Mr. Simmons." A special relationship may be claimed by a plaintiff, as it was in *Fazzolari,* to impose a heightened duty of care on a defendant. A special relationship may also be claimed by a defendant to limit its liability to specific duties imposed by that relationship. Plaintiffs assert that they pleaded a special relationship between defendant, as custodian, and Simmons, as prisoner, that enhanced defendant's duty to protect plaintiffs from harm.

However, we need not decide whether the allegations are sufficient to support liability based on a special relationship. Plaintiff alleges that defendant was negligent in permitting Simmons' escape by failing properly to supervise him and by leaving the key in the van; in failing to warn the public[4] of the escape; and in failing promptly to conduct an extensive

---

[4] Plaintiffs did not offer any evidence that defendant knew or should have known that Simmons' mother lived in the vicinity of the work camp. Therefore, it was proper to strike the allegations relating to the Simmons' mother's home, even if the court did it on the erroneous basis of lack of foreseeability as a matter of law.

search for Simmons. Those allegations seek to impose liability for failure to warn and failure to provide appropriate safety measures. So, the framework for analysis is set out in *Fuhrer v. Gearhart By The Sea, Inc.,* 306 Or 434, 438, 760 P2d 874 (1988):

> "A defendant may be liable if the defendant can reasonably foresee that there is an unreasonable risk of harm, a reasonable person in the defendant's position would warn of the risk, the defendant has a reasonable chance to warn of the risk, the defendant does not warn of the risk, and the plaintiff is injured as a result of the failure to warn."

■ Defendant's only arguments relating to the factors articulated in *Fuhrer* are that the harm was not foreseeable and that its actions were reasonable as a matter of law.[5] Defendant first contends that foreseeability of risk of harm is limited to the "narrow issue" of whether it is liable for an escaped inmate's acts that are outside the scope of the risk of the crimes for which he was incarcerated: burglary and unauthorized use of a motor vehicle. *See Hefty v. Comprehensive Care Corp.,* 307 Or 247, 252, 766 P2d 1026 (1988); *Cain v. Rijken,* 300 Or 706, 717 P2d 140 (1986).

■ The nature of the crimes for which Simmons was incarcerated is not, however, the correct focus. *See Hefty v. Comprehensive Care Corp., supra,* 307 Or at 252. Foreseeability does not require identification of a precise risk.[6] The question is whether defendant's conduct in "permitting and assisting" Simmons to escape, in failing to warn the public of that escape and in not conducting an extensive search created a "generalized risk of the types of incidents and injuries that

---

[5] Reasonableness is discussed *infra,* 104 Or App at 556.

[6] In *Fazzolari v. Portland School Dist. No. 1J, supra,* 303 Or at 13, the court said:

"As Professor Vetri noted in reviewing *Stewart* [*v. Jefferson Plywood Co.,* 255 Or 603, 469 P2d 783 (1970)], when foreseeable risk is a measure of faulty conduct and also of liability to a plaintiff, it is important that all foreseeable risks of harm to other classes of persons be considered in evaluating the reasonableness or unreasonableness of defendant's conduct." (Footnote omitted.)

Vetri wrote:

"[I]t is important to recognize that the jury should consider *all* foreseeable risks of harm in making the unreasonableness balance and not be restricted merely to the risk related to the plaintiff." Vetri, "Tort Markings: Chief Justice O'Connell's Contributions to Tort Law," 56 Or L Rev 235, 241 n 24 (1977). (Emphasis in original.)

occurred * * *." *Fazzolari v. Portland School Dist. No. 1J, supra,* 303 Or at 13. The "generalized risk" is that an escaped felon will harm those with whom he comes in contact while on the run from the authorities.[7]

■     The fact that Simmons was incarcerated for non-violent crimes and had no adult history of violence does not mean that it was unforeseeable, as a matter of law, that he would pose a danger to persons with whom he might come in contact if he were to escape. Foreseeability is ordinarily a jury question. The court's role is to determine if

> "plaintiff's injury and the manner of its occurrence was *so highly unusual* that [it] can say as a matter of law that a reasonable man, making *an inventory of the possibilities of harm* [that] his conduct might produce, would not have reasonably expected the injury to occur." *Stewart v. Jefferson Plywood Co., supra* n 5, 255 Or at 609. (Emphasis supplied.)

"[I]n an extreme case a court can decide that no reasonable factfinder could find the risk foreseeable * * *." *Donaca v. Curry Co.,* 303 Or 30, 38, 734 P2d 1339 (1987).

This is not an "extreme case" in which the circumstances are out of the range within which a jury could determine that plaintiffs' injuries were reasonably foreseeable. *See Stewart v. Jefferson Plywood Co., supra.* Plaintiff presented proof that Simmons was incarcerated for burglary and unauthorized use of a motor vehicle, that defendant had information that he had a history of mental instability, evidenced by three admissions to Dammasch State Hospital,[8] in addition to "some indication of a violent temper while growing up," and that he had a nine-year history of alcohol and drug abuse.[9]

---

[7] Defendant argues that plaintiffs were unforeseeable plaintiffs. There is no evidence that defendant knew or should have known that these particular plaintiffs were in danger. *See* n 4, *supra.* However, as members of the public, plaintiffs were members of the class of persons who might be endangered by the conduct of an escaped felon.

[8] There is no additional information in the record about Simmons' treatment at Dammasch, except an unexplained reference by Simmons' inmate counselor to a "psychological report."

[9] A January, 1986, inmate evaluation by the inmate counselor states, in part:

"Some indication of a violent temper while growing up. * * * Alcohol/drug use are problem areas. No significant employment since 1981. * * * Reports his problems began in 1981 after the death of his adoptive father. He suffered an emotional shock and has since continued to abuse alcohol and drugs. He has been admitted to Dammasch Hospital on three occasions."

The state would have us hold that it was unforeseeable that a convict with that history would steal a van and commit violence against persons with whom he comes in contact.

"It is reasonable to expect that an escape will be accomplished by the use of * * * force." *Christensen v. Epley,* 36 Or App 535, 541, 585 P2d 416 (1978), *aff'd in part by an equally divided court; rev'd in part* 287 Or 539, 601 P2d 1216 (1979).[10] It is hardly farfetched to decide that it is foreseeable that an escaped felon might be "sufficiently desperate as to be 'dangerous,' so as to 'pose a threat of physical injury'" to persons that he might encounter while on the run. *Christensen v. Epley,* 287 Or 539, 566, 601 P2d 784 (1979). Neither is it farfetched to decide that it is foreseeable that a person who is incarcerated for unauthorized use of a motor vehicle and who has escaped in a stolen van would attempt to obtain a different vehicle, perhaps by using a firearm. A properly charged jury should be entrusted to decide those foreseeability matters in determining whether defendant knew or should have known that Simmons was likely to cause bodily harm to another.

■■ Defendant also argues that, even if we conclude that plaintiffs' injuries were foreseeable, we should still affirm the trial court, because defendant's actions are protected by discretionary immunity. ORS 30.265(3)(c) provides that a public body is immune from liability for "[a]ny claim based upon the performance of or failure to exercise or perform a discretionary function or duty, whether or not the discretion is abused." The state has the burden to establish immunity. *Little v. Wimmer,* 303 Or 580, 588, 739 P2d 564 (1987).

After this case was argued, the Supreme Court reversed our decision in *Lowrimore v. Dimmitt,* 99 Or App 192, 781 P2d 411 (1989), on which defendant relies for much of its immunity argument. 310 Or 291, 797 P2d 1027 (1990). The Supreme Court said:

"[I]mmunity will apply to decisions involving the making of

---

[10] One allegation in *Christensen* was that the defendant, who was responsible for supervising a juvenile detention facility, was liable for the death of a police officer who was killed by an escaped inmate's accomplice. The plaintiff alleged that the defendant knew or should have known that the accomplice had run away from home and had previously, acting with the inmate, stolen a car and fled the county. The Supreme Court affirmed our holding that that was enough to go to the jury. *Christensen v. Epley, supra,* 287 Or at 542. There was no evidence that the accomplice was violent.

policy, but not to routine decisions made by employees in the course of their day-to-day activities, even though the decision involves a choice among two or more courses of action. A traffic officer's decision to pursue a vehicle * * *, [al]though discretionary in the sense that it involves the exercise of judgment and choice by the officer, is not one that qualifies its maker to immunity under ORS 30.265(3)(c). The making of the decision to pursue does not create any departmental policy and was not made by a person 'with governmental discretion.' *Little v. Wimmer, supra,* 303 Or at 588. Although the decision to pursue may have been made pursuant to a county departmental policy, the decision itself is not a policy judgment within the meaning of *McBride v. Magnuson,* [282 Or 433, 578 P2d 1259 (1978)] and *Stevenson v. State of Oregon,* [290 Or 3, 619 P2d 247 (1980)]." 310 Or at 296. (Footnote omitted.)

Under that analysis, defendant is not immune from liability.

■ Defendant argues that summary judgment was nonetheless proper because, as a matter of law, even if the risk of harm was foreseeable, its conduct was not unreasonable. In *Fuhrer v. Gearhart By The Sea, Inc., supra,* the court stated that a trier of fact must consider four factors in determining whether action or failure to act is reasonable: the likelihood of the harm, the severity of the possible harm, the cost of taking actions that would prevent the harm and the defendant's position, including the relationship with the plaintiff. "[I]f the risk is great, either in likelihood or magnitude, and the cost is minimal, the reasonableness of the action should be determined by the factfinder." 306 Or at 439. There is evidence that Simmons was a felon who had manifested a violent temper and also had a history of mental instability. A jury could conclude that those characteristics would expose unprotected persons to risk of severe harm. Neither party presented evidence of the cost of providing warnings or preventing the escape. Nonetheless, considering the possible magnitude of the harm, the reasonableness of defendant's actions should be determined by the jury.

Reversed and remanded.

**RIGGS, J.,** concurring.

I agree with the result reached by the majority. However, I would also find that there was a special relationship between defendant and Simmons.

I would begin the analysis, as defendant urges, with the question of whether there was a special relationship that creates an obligation for the state "apart from any general responsibility not unreasonably to expose people to a foreseeable risk of harm." *Fazzolari v. Portland School Dist. No. 1J,* 303 Or 1, 19, 734 P2d 1326 (1987). In that case, the court said:

> "In short, *unless the parties invoke a status, a relationship* or a particular standard of conduct that creates, defines, or limits the defendant's duty, the issue of liability for harm actually resulting from defendant's conduct properly depends on whether that conduct unreasonably created a foreseeable risk to a protected interest of the kind of harm that befell the plaintiff." 303 Or at 17. (Emphasis supplied.)

Here, the trial court concluded that "[n]o special relationship existed between the *two plaintiffs and the state prisoner.*" (Emphasis supplied.) That is not the issue. The issue is whether there was a special relationship between defendant and the prisoner or defendant and plaintiffs. *Restatement (Second) Torts* § 315(a) and (b). Those subsections provide:

> "[T]here is no duty to control the conduct of a third person so as to prevent him from causing physical harm to another unless
>
> "(a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or
>
> "(b) a special relation exists between the actor and the other which gives to the other a right to protection."

Defendant contends that the facts of this case do not fit within subsection 315(a), because such "special relationships" can only exist when the state has a prisoner in custody whom it "knows or should know to be likely to cause bodily harm to another" if he were to escape. *Restatement (Second) Torts* § 319.[1] It argues that it did not have the requisite knowledge, and thus no special relationship existed,

---

[1] *Restatement (Second) Torts* § 319 provides:

"One who takes charge of a third person whom he knows or should know to be likely to cause bodily harm to another if not controlled is under a duty to exercise reasonable care to control the third person to prevent him from doing such harm."

because Simmons had "not demonstrated previously any conduct which could suggest dangerousness to the public. Therefore, there was no basis from which Corrections Division reasonably could foresee plaintiff's injuries."

I disagree. Under these facts, there was a special relationship between defendant as custodian and Simmons as a prisoner entrusted to its care that gave rise to a duty to exercise reasonable care to prevent him from escaping and harming others. *Restatement (Second) Torts* § 315(a); *Christensen v. Epley*, 36 Or App 535, 540-41, 585 P2d 416 (1978), *aff'd in part by an equally divided court; rev'd in part*, 287 Or 539, 601 P2d 1216 (1979). I am not persuaded by defendant's argument that there was no such relationship because Simmons' criminal history was not demonstrably violent.[2] Section 315 does not necessarily require that there be a custodial relationship between the jailer and the prisoner "of such a nature as to satisfy *Restatement* § 319." *Christensen v. Epley, supra,* 287 Or at 552 (Tongue, J. concurring). In my view, given the information that defendant had about Simmons' violent temper while growing up, his history of alcohol and substance abuse and his multiple admissions to the state hospital, there were sufficient facts known to defendant to establish a special relationship.

For these reasons, I concur.

---

[2] The affidavit of Simmons' inmate counselor states that the Custody Review Committee "concluded that Simmons was a prime candidate for placement at the Forest Camp. [He] was serving time for non-assaultive offenses. There was no indication in his Pre-Sentence (PSI) report that any violence or potential violence was utilized."