Argued and submitted January 27, reversed and remanded in part; cross-appeal dismissed as moot June 12, 2003

Timothy RUTTER
and Joanne Rutter,
*Respondents - Cross-Appellants,*

*v.*

Douglas NEUMAN
and Mountain Park Development,
*Defendants,*

*and*

CITY OF ASHLAND,
*Appellant - Cross-Respondent.*

974974L2; A115627

71 P3d 76

Gerald L. Warren argued the cause and filed the briefs for appellant - cross-respondent.

Lee S. Werdell argued the cause for respondents - cross-appellants. With him on the brief was Werdell & Hanson.

Before Landau, Presiding Judge, and Armstrong and Brewer, Judges.

LANDAU, P. J.

## LANDAU, P. J.

Defendant City of Ashland (city) appeals a judgment in favor of plaintiffs on their claim of negligence arising out of a landslide that damaged their property. The city argues that, among other things, the trial court should have entered a directed verdict in its favor because the claim is barred by applicable statutes of ultimate repose. Plaintiffs cross-appeal, arguing that the trial court erred in limiting the city's liability in accordance with the Oregon Tort Claims Act, ORS 30.270. On the appeal, we reverse and remand for entry of judgment in favor of the city. Because of that disposition, the cross-appeal is moot.

The following facts are not in dispute. Plaintiffs purchased a home in Ashland in 1980. The house is built at the base of a hill on debris deposits left from a long history of landslides. In 1983, a developer began work on a residential development directly uphill from plaintiffs' house. Among other things, the developer built a private road, Marklyn Drive, by cutting and filling the slopes in the hillside. The natural drainage was channeled through a culvert under the fill.

In September 1983, some of the hillside began to erode into plaintiffs' back yard. Plaintiffs believed that the erosion had occurred because the developer had used the wrong fill material. Plaintiffs complained to the city, which hired Hicks, an engineering geologist, to examine the site. Hicks concluded that there was a risk of debris slides, particularly if the culvert under Marklyn Drive became clogged and water runoff began to flow over the face of the fill. He recommended a number of methods that could be employed to minimize that risk.

In late 1983 or early 1984, plaintiffs learned of the contents of Hicks's report to the city. Plaintiffs then hired an attorney, who wrote a letter to the city requesting that it take some action to remedy the hazardous conditions created by the developer's improper road construction. In September 1984, their attorney wrote another letter to the city urging it to act at once to remedy the "dangerous situation" caused by the developer's construction of Marklyn Drive. That same

month, the attorney prepared a notice of tort claim, which advised:

"[A] large and unstable mass of granite fill was placed by the developer uphill from the homes of [plaintiffs]. That mass of fill presents a hazard of landslide. It has not been removed, although the developer has disavowed any intention of finishing the project."

Plaintiffs' attorney prepared still another letter after that, declaring that plaintiffs intended to hold the city liable for "past and future erosion and land slide problems."

Plaintiffs, however, never followed through. Plaintiff Timothy Rutter explained that he did not want to initiate legal action because

"I, you know, I don't like suing. I, uhm, you know, my house did[n't] incur that much damage; and at the time I didn't feel it was worth going into. I didn't want to get involved in a lawsuit."

Plaintiff Joanne Rutter similarly explained that "I would rather just kind of walk away from it at that point." Plaintiffs moved out of the house and converted it to a rental.

Meanwhile, the city initiated an action to enjoin the developer from completing the project. In November 1984, the city obtained a court order requiring the developer to comply with the recommendations in the Hicks report and to permit the city to inspect that remedial work. Following that, the city made annual inspections to ensure compliance with the court's order.

In January 1997, after an extraordinarily heavy rain storm, mud and debris broke loose from Marklyn Drive and flowed down the hill into the back yard of plaintiffs' rental house, causing extensive damage to the house and yard.

On December 31, 1997, plaintiffs filed a complaint for negligence against the city and the developer. After several amendments, the sole allegation of negligence as to the city was that, "[w]ithin the last ten years, [d]efendant City of Ashland was negligent in failing to abate the condition of the fill under Marklyn Drive." According to plaintiffs, existing ordinances "allowed the City to remedy unsafe conditions on

private land within the city." When the city failed to act on that authority, plaintiffs alleged, it was negligent.

The city moved for summary judgment, arguing that plaintiffs' claim was barred by the ten-year statutes of ultimate repose, ORS 12.115(1) and ORS 12.135(1). The city argued that plaintiffs were aware of the condition of the fill under Marklyn Drive for at least 13 years by the time they filed their complaint, as demonstrated by—among other things—their 1984 tort claim notice complaining about the danger of landslides. Plaintiffs responded that, notwithstanding the statutes of ultimate repose, their claim is timely because it is based on a "continuing relationship" with the city during the ten years before the filing of the complaint. The trial court denied the city's motion.

At trial, following the close of the evidence, the city moved for a directed verdict on the same ground. The trial court, expressing reluctance to depart from the previous ruling on the summary judgment motion, denied the city's motion. The jury returned a verdict in favor of plaintiffs.

■ On appeal, the city asserts that "[t]he trial court erred in not ruling that plaintiffs' claim was barred by the statutes of ultimate repose." The city contends that the trial court should have granted its motion for summary judgment and its motion for a directed verdict. At the outset, we pause to comment on the form of the assignment of error. ORAP 5.45(3) requires that "[e]ach assignment of error shall identify precisely the legal, procedural, factual, or other ruling that is being challenged." In this case, the city's assignment does not comply with the rule, because it assigns error to what is essentially a legal conclusion and not a specific ruling. In fact, the city's assignment of error encompasses two separate rulings: the denial of a motion for summary judgment and the denial of a motion for a directed verdict. That is not a mere technicality. In this case, for example, one of the two rulings that the city purports to encompass within its assignment—the denial of the motion for summary judgment—is not even reviewable on appeal. *Seidel v. Time Ins. Co.*, 157 Or App 556, 560, 970 P2d 255 (1998) (denial of summary judgment motion is not reviewable on appeal "unless it rests on a 'purely legal contention' that does not require the

establishment of any predicate facts") (quoting *Payless Drug Stores v. Brown*, 300 Or 243, 246, 708 P2d 1143 (1985)). The only reviewable ruling is the trial court's denial of the city's motion for a directed verdict, to which we now turn our attention.

■■ A directed verdict is appropriate only if the moving party is entitled to judgment as a matter of law, after viewing the evidence in the light most favorable to the other parties. *Metropolitan Property & Casualty v. Harper*, 168 Or App 358, 367, 7 P3d 541 (2000). In this case, there is no dispute as to the facts; the only argument is whether those facts establish, as a matter of law, that plaintiffs commenced their action against the city after the ten-year periods of ultimate repose provided in ORS 12.115(1) and ORS 12.135(1). The former statute provides:

> "In no event shall any action for negligent injury to person or property of another be commenced more than 10 years from the date of the act or omission complained of."

ORS 12.115(1). The latter statute provides, in part:

> "An action against a person, whether in contract, tort or otherwise, arising from such person having performed the construction, alteration or repair of any improvement to real property or the supervision or inspection thereof * * * shall be commenced within 10 years from substantial completion or abandonment of such construction, alteration or repair of the improvement to real property."

ORS 12.135(1).

The city argues that plaintiffs' action is time barred under ORS 12.115(1) because the "act or omission complained of" is its failure to abate a condition of which plaintiffs were aware more than 13 years before they filed their complaint. The city similarly argues that the action is time barred under ORS 12.135(1) because the allegedly defective road was completed more than 13 years before the filing of the complaint.

Plaintiffs argue that neither statute of ultimate repose applies because their action is not based on the failure of the city to abate the condition in 1984, but rather on the continuing failure of the city to take action from 1984

through the filing of the complaint in 1997. Citing *Josephs v. Burns & Bear*, 260 Or 493, 491 P2d 203 (1971), *overruled in part on other grounds by Smothers v. Gresham Transfer, Inc.*, 332 Or 83, 23 P3d 333 (2001), plaintiffs contend that the statutes of ultimate repose do not apply when an action is based on an "active, continuous relationship" between the parties. Citing *Little v. Wimmer*, 303 Or 580, 739 P2d 564 (1987), they argue that, in this case, the "active, continuous relationship" exists by virtue of the city's continuing obligation to remedy public nuisances, as provided in the Ashland Municipal Code sections 9.08.200 to 9.08.260.

The city replies that there is no evidence of any active, continuing relationship between it and plaintiffs during the ten years preceding the filing of the complaint. There is, the city argues, no obligation to abate public nuisances, only the *authority* to do so.

In *Josephs*, the plaintiffs initiated a negligence action following the collapse of a roof. The collapse occurred approximately 17 years after the original construction. The defendant architects and engineers who designed and built the roof demurred to the complaint on the ground that the action had been commenced after the ten-year statute of ultimate repose, ORS 12.115(1), had run. The Supreme Court agreed, holding that the statute applies "regardless of when the damage resulted or when the act or omission was discovered." *Josephs*, 260 Or at 500. The plaintiffs insisted that the defendants had a continuing duty to warn them of the hazards of a faultily constructed roof. To that, the court responded:

> "If the statute was intended to be one of ultimate repose, regardless of circumstances, it would follow that the legislature did not intend the statute to be circumvented by allegations that subsequent to the fundamental wrong, a continuing duty existed to rectify the results of such wrong. By this statement we do not intend to prejudge a situation in which an active, continuous relationship between plaintiff and defendant exists from the time of the negligent acts to a time within the period during which an action is permitted."

*Id.* at 501-02. The court did not explain what it meant by an "active, continuous relationship." Nor did it explain the source of the exception to the wording of the statutes of ultimate repose.

The Supreme Court more fully explained what it meant by an "active, continuous relationship" in *Cavan v. General Motors*, 280 Or 455, 571 P2d 1249 (1977). In that case, the plaintiff was injured in a tractor accident when its brakes failed to operate. The tractor had been manufactured and sold to the plaintiff's employer more than ten years before the filing of the complaint. The plaintiff argued that the complaint nevertheless had been timely filed because of an active, continuous relationship between the defendants and his employer. According to the plaintiff, that active, continuous relationship was demonstrated by the fact that, within ten years of the filing of the complaint, the defendants had sold his employer a replacement part for the tractor brakes. The Supreme Court was not persuaded:

> "The record discloses no 'active, continuous relationship' between plaintiff and defendants or between plaintiff's employer and defendants. The only evidence pointed out as establishing the existence of a continued relationship shows that in 1968 defendants provided Houghton Logging Company with an add-on emergency brake actuator designed to remedy the problem which allegedly led to the injury complained of here. This actuator was placed upon another, similar piece of equipment and failed to work satisfactorily. This single occurrence is not illustrative of the situation reserved in *Josephs*. The transaction in question here is a normal sale of goods.

> "In *Josephs* we withheld consideration of situations in which the plaintiff is in a relationship of trust and confidence with the defendant and in which continued treatment or other ongoing resort to the skills of the defendant is required. The classic example is the doctor-patient relationship. *See Hutchinson v. Semler*, 227 Or 437, 443-44, 361 P2d 803, 362 P2d 704 (1961). In cases such as this the potential plaintiff may be in no position of independence to recognize fairly the existence of a cause of action until the relationship is terminated. Such a situation may call for a different application of the policies behind a statute of limitations or statute of ultimate repose. An ordinary contract

relationship for the sale of goods does not call for the imposition of a special rule."

*Id.* at 458 (footnote omitted). Thus, it appears that the court recognized a "special rule" that applied, notwithstanding the wording of the statutes of ultimate repose, a rule predicated on the existence of a relationship that puts a plaintiff in a position in which he or she is not able "to recognize fairly the existence of a cause of action until the relationship is terminated." *Id.* In candor, it is difficult to imagine that such a "special rule" would pass muster under current standards of statutory construction. *See, e.g., Huff v. Great Western Seed Co.*, 322 Or 457, 463-64, 909 P2d 858 (1996) (notwithstanding earlier cases, courts cannot apply a "discovery rule" to a statute of limitations if the text of the statute does not so provide). But the Supreme Court has not disavowed *Josephs*.

In *Little*, in fact, the Supreme Court invoked the "active, continuous relationship" rule in concluding that a claim was not time barred. In that case, the plaintiffs were injured in an automobile collision. They sought damages from the state, alleging that the state had negligently designed, constructed, and maintained the highway on which the accident occurred. Citing both ORS 12.115(1) and ORS 12.135(1), the state moved for summary judgment on the ground that the claim had been brought more than ten years after the highway had been constructed. The court held that neither statute barred the claim. The court reasoned that, by statute, the state had a mandatory and continuous obligation of supervision and control over all matters pertaining to the improvement, maintenance, operation, and administration of the state's highways. That statutorily mandated obligation, the court held, continued from the time of construction through the date of the accident. Thus, it concluded, the claim was not time barred. *Little*, 303 Or at 585.

In this case, there is no evidence of an "active, continuous relationship" between plaintiffs and the city. In fact, there is no evidence of any relationship between plaintiffs and the city after 1984, when plaintiffs moved out of the house and decided not to sue the city. Plaintiffs have cited no evidence of any conversations, correspondence, or other communications between them and the city from 1984 to 1997.

Certainly nothing in the record demonstrates the existence of the sort of "relationship of trust and confidence with the defendant" that the court said was necessary in *Cavan*.

Plaintiffs' sole contention is that an active, continuous relationship arose out of the city's continuing duty to abate public nuisances, as provided in section 9.080.200 of the Ashland Municipal Code. According to plaintiffs, their claim is "identical to the cause of action in *Little*." In *Little*, however, the state was subject to a continuing, *mandatory duty* to maintain the state's highways. That obligation was the source of the continuing relationship that the court found dispositive. In this case, the city is not subject to any such duty.

City ordinances do provide that certain categories of activities are public nuisances. Ashland Municipal Code §§ 9.08.020 to 9.08.180. The ordinances also provide that the city has the authority to declare additional activities public nuisances. *Id.* at § 9.08.190. Once the city declares an activity to be a public nuisance, it "may cause the nuisance to be abated." *Id.* at § 9.08.220.

Those ordinances, however, do not require the city to do anything. They simply authorize the city to abate a public nuisance. Moreover, that authority is conditioned on there being a public nuisance to abate. An improperly constructed private road is not among the categorical public nuisances listed in the ordinances. And nothing in the record suggests that the city has exercised its authority under section 9.08.190 by declaring the road to be a public nuisance. Plaintiffs do not explain—and we do not understand—how the city violated a supposed duty to abate public nuisances in the absence of a declaration that a public nuisance even exists.

We conclude that the trial court erred in denying the city's motion for a directed verdict on the ground that the action is time barred. The city advances other assignments, which are academic in light of the foregoing conclusion. Additionally, because of our disposition of the appeal, the cross-appeal is moot.

Reversed and remanded for entry of judgment in favor of defendant City of Ashland; cross-appeal dismissed as moot.